## GIFFORD v. UNITED STATES.

(District Court, D. New Jersey. May 27, 1921.)

**Army and navy ☞51½, New, vol. 12A Key-No. Series—Evidence held not to show beneficiary in war risk insurance was changed.**

Where soldier had taken out $10,000 war risk insurance, his wife being beneficiary thereof for $5,000 and his mother beneficiary for the same amount, evidence *held* not to show that a later instrument, in form of application for insurance, was or was intended to be a change of beneficiary, as to the wife's $5,000 part of the policy, from the wife to the mother.

In Equity. Suit by Mildred Muriel Gifford against the United States. Decree for plaintiff.

Charles C. Colgan, of Jersey City, N. J., and John Edmond Hewitt, of New York City, for plaintiff.

Elmer H. Geran, of Asbury Park, N. J., for the United States.

Merritt Lane, of Newark, N. J., for Anna Belle Gifford.

DAVIS, Circuit Judge. This suit was brought by the plaintiff against the United States for $5,000 insurance on the life of her husband, Roland Craig Gifford, a soldier in the United States Army. He enlisted on January 4, 1918, and on the 1st day of the following May, he made application for $10,000 insurance. In this policy, which was issued in due time, he named his wife, the plaintiff, beneficiary to the extent of $5,000, and his mother, Anna Belle Gifford, for the same amount. On July 13, 1918, he executed a paper purporting to be "an application for insurance" for $5,000, and designated his mother as beneficiary. The "application" follows:

"Treasury Department, Bureau of War Risk Insurance, Division of Military and Naval Insurance.

"Application for Insurance.

"My full name is Roland Craig Gifford. Home address: 33 Freeman Ave., East Orange, N. J. Date of Birth: April 1, 1894. Age, 24. Date of last enlistment or entry into actual service, Jan. 4, 1918.

"I hereby apply for insurance in the sum of $5,000.00, payable as provided in the Act of Congress approved October 6, 1917, to myself, during permanent disability, and from and after my death to the following persons, for the following amounts:

| Relation-ship to Me. | Name of Bene-ficiary. | Post Office Address, No. and St. or Rural Route, City, Town, or P. O., and State. | Amount of Insurance for Each Beneficiary in Multiples of $50. |
|---|---|---|---|
| Mother. Age 38 (estimated). | Anna Belle Gifford. | 33 Freeman Ave. East Orange, New Jersey. | $5,000. |

"[Here follow certain provisions not pertinent to this controversy.]

"To whom do you wish policy sent? Name: Anna Belle Gifford, East Orange, N. J. (33 Freeman St.)

"Signed at Garden City, L. I., N. Y., on the 13th day of July, 1918.

"Roland Craig Gifford.

"Organization: 361st Aero Squadron.

"L. A. De Vore, 1st Lieut. A. S. 361st Aero Squadron."

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Accompanying the said application was the following communication from L. A. De Vore, Lieutenant of the applicant:

"Herewith insurance application, Form 2A, Pvt. Roland C. Gifford, changing beneficiary from wife, Mrs. R. C. Gifford, 5 Wilson St., Irvington, N. J., to mother, Mrs. Anna Belle Gifford, 33 Freeman Ave., East Orange, New Jersey.
                                                    "L. A. De Vore, 1st Lieut. A. S."

The applicant died on October 27, 1918. A contest arose between the mother and widow of the insured over the original $5,000 allotted to the latter. It is contended that the above application is in fact, though not in form, a change of beneficiary from the wife to the mother. The Bureau of War Risk Insurance awarded the $5,000 originally allotted to the mother to her, and after hearing and considering the contentions and argument of the parties awarded the other $5,000 also to the mother.

Section 13 of the act provides, inter alia:

"That in the event of disagreement as to a claim under the contract of insurance between the bureau and any beneficiary or beneficiaries thereunder an action on the claim may be brought against the United States in the District Court of the United States in and for the district in which such beneficiaries or any one of them resides." 9 Federal Statutes Annotated (2d Ed.) p. 1305 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514kk).

Accordingly proceedings were instituted in this court to have the plaintiff, the widow, adjudged the lawful beneficiary under the policy.

The War Risk Insurance Act provides in section 402 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514uuu) that:

"Subject to regulations, the insured shall at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries but only within the classes herein provided."

The regulation in effect at that time provided that:

"Every change of beneficiary shall be made in writing and shall be signed by the insured and be witnessed by at least one person. No change of beneficiary shall be valid unless and until it is recorded in the Bureau of War Risk Insurance." T. D. 25 W. R. Regulation No. 14 of March 20, 1918.

The regulations, therefore, providing for a change of beneficiary at the time of the death of the insured, were that, first, a change should be made in writing, signed by the insured, and witnessed by one person; and, second, the change must be recorded in the Bureau of War Risk Insurance. The plaintiff insists that these requirements were not complied with, and therefore no change of beneficiary without such compliance could be made. She contends that, where the insurer has made reasonable regulations defining the method by which the insured may change the beneficiary, the regulations are part of the contract and the right to change can be exercised in no other way. Metropolitan Ins. Co. v. Clanton et al., 76 N. J. Eq. 4, 73 Atl. 1052; Sullivan et al. v. Maroney et al., 77 N. J. Eq. 565, 78 Atl. 150; Sovereign Camp, Woodmen of the World, v. Israel, 117 Ark. 121, 173 S. W. 855; Supreme Lodge of Fraternal Brotherhood v. Price, 27 Cal. App. 607, 150 Pac. 803.

This is doubtless the law as applied to ordinary life insurance under normal circumstances, but more liberal rules prevail in fraternal organi-

zations. The rule invoked by the plaintiff that the insured must change the beneficiary in the manner pointed out by the policy and by-laws of the company is subject to three exceptions: (1) Waiver of strict compliance with the rules by the insurer; (2) if it is beyond the power of the insured to comply literally with the regulations, a court of equity will treat the change as having been legally made, when the insured has done all that he can to effect the change; (3) if the insured has done all he can to effect a change, and dies before the change is actually made, a court of equity will treat the change as having been made and the certificate issued. Supreme Council of Royal Arcanum v. Behrend, 247 U. S. 394, 38 Sup. Ct. 522, 62 L. Ed. 1182, 1 A. L. R. 966; Supreme Conclave, Royal Adelphia, v. Cappella (C. C.) 41 Fed. 1.

It is sought to bring this application within these exceptions and the regulations of the department by certain letters alleged to have been written by the insured, by the letter and deposition of Lieutenant De Vore, and by the circumstances surrounding the applicant when he sought to make the change. He wrote a letter to Miss Ethel Barnes on July 11, 1918, from Garden City, Long Island, two days before the application was made, and several letters afterward to his parents. In the letter to Miss Barnes, he said, "I am going to have both allotment and insurance all made out to mother;" but in none of the letters written after the application was made did he say or even hint to any one that he *had made* a change of the beneficiary.

The letter of the lieutenant was quoted in connection with the application above. His deposition was taken, and it appears from it that he does not remember individually or specifically the insured, nor does he recall what he said to him. The letter, therefore, was a conclusion drawn by the lieutenant from something that was said to him by the insured, but what it was he does not now know.

It is contended by the defendant and the mother that the insured did all that he could to effect the change of the beneficiary, but died before the change was made and the certificate issued, and therefore he comes within the above exceptions. They urged that a more liberal rule should apply to soldiers insured by the Bureau of War Risk Insurance than even in fraternal organizations, in which the beneficiary does not have a vested interest, but only an expectancy, which the insured may defeat without the consent or knowledge of the beneficiary. Supreme Council of Royal Arcanum v. Behrend, supra. Soldiers had no option, but were compelled to take out insurance of an amount somewhere between $500 and $10,000. Being involuntary insurers, they had no power of selecting their own agents, but had to make their desires known to their superior officers.

In view of the unusual circumstances surrounding soldiers in the army and their restricted freedom of action, a liberal rule should be adopted in construing their acts in relation to their insurance. But do the facts in the present case bring it within the liberal rules contended for? An analysis of the evidence shows that the application on its face was made for additional insurance. The instrument itself, executed by the insured and witnessed in accordance with the requirements of the statute and regulations, does not contain a word or hint that it was intended to be an application for a change of beneficiary

and was not so construed and accepted by the Bureau of War Risk Insurance, notwithstanding the accompanying letter of Lieutenant De Vore. That bureau thought the "application to be a request for a reduction of the insurance from $10,000 to $5,000, and on November 29, 1918, notified the commanding officer of the insured's squadron to that effect." While it may be justly insisted that the regulations for change of beneficiary should be liberally construed and that the intention should control, yet it is necessary that the insured should change or seek to change the beneficiary by some act which indicated his intention and which can be established by legal evidence. To admit the proof offered here, or to base an opinion upon it (I actually hear it, no jury being present), would violate all established rules of evidence, and make it very easy for unscrupulous persons to perpetrate frauds upon soldiers and others similarly situated. The insured might well have changed his mind after writing to Miss Barnes, or the lieutenant might have misunderstood him and drawn the wrong conclusion.

It is argued that the Director of the Bureau of War Risk Insurance, who had power to make rules and regulations, waived the rules and regulations in awarding the $5,000 to the mother and against the widow of the insured; but this position cannot be maintained, for the rights of the parties were determined as of the date of the death, and any waiver of rule or regulation made by the Director thereafter cannot have any retroactive effect. The regulations, so far as they control, are those in effect at the time of the death of the insured, when the rights of the plaintiff vested. The regulations in force at the time the application was made continued until after the death of the insured. These alone may be considered. Any change made by the Director afterward has no bearing on this case. Under all the evidence, I am constrained to hold that the plaintiff is the lawful beneficiary named in the policy. The back installments should be paid her now, and the future installments should be paid in accordance with the terms of the policy.

The attorney of the plaintiff has done considerable work in this case, and, in my opinion, is entitled to the full allowance of 5 per centum of the amount recovered under the provisions of the act.

The defendant has requested me to find the following facts:

(1) On May 1, 1918, Roland C. Gifford, a soldier, executed an application for war risk insurance, designating as beneficiary his wife, Mildred Muriel Gifford, for $5,000, and his mother, Anna Belle Gifford, for $5,000—a total of $10,000, the maximum allowed by law. Exhibit D–2, 5/24/20, made a part of this finding of fact.

(2) On July 13, 1918, while the soldier was in camp at Garden City, just prior to his sailing abroad, he executed a paper writing, Exhibt D–4, 5/24/20, made a part of this finding of fact.

(3) The paper, Exhibit D–4, was signed in the presence of L. A. De Vore, lieutenant in charge of the contingent to which the soldier was assigned.

(4) The lieutenant transmitted the paper, Exhibit D–4, 5/24/20, to the Bureau of War Risk Insurance, Washington D. C., through military channels, under date July 13, 1918, with a letter in evidence, Exhibit made a part of this finding of fact.

(5) Roland C. Gifford died abroad in the service October 27, 1918.

(6) Application was made to the Bureau of War Risk Insurance by his wife, who survived him, Mildred Muriel Gifford, for payment to her of the insurance of $5,000 under application dated May 1, 1918.

(7) The matter was submitted to the Bureau of War Risk Insurance on March 21, 1919.

(8) The Director of War Risk Insurance made an award, Exhibit P–6, which is made a part of this finding of fact.

(9) Such award was approved by the Secretary of the Treasury.

(10) At the time of the signing of Exhibit D–4, the soldier Roland C. Gifford, came to Lieutenant De Vore, his immediate superior, and informed De Vore that he desired to change that portion of the insurance which was payable to his wife, so that it would be payable to his mother. The lieutenant (De Vore) had the soldier execute D–4, as a change of beneficiary.

(11) The form, Exhibit D–4, was used by the lieutenant because there were not at the time any forms for change of beneficiary in his office.

(12) It was customary to use forms similar to Exhibit D–4 when soldiers desired to change beneficiaries, because at the time there were no other forms in the office.

(13) Exhibit D–4 was signed by the soldier as a change of beneficiary from the wife to the mother.

(14) In signing the paper, Exhibit D–4, the soldier intended to effect a change of beneficiary from the wife to the mother.

(15) The soldier had no other course to pursue, if he desired to change the beneficiary, than the course which he did pursue, to wit, to go to his superior officer.

(16) The soldier did everything within his power to effect a change of beneficiary from the wife to the mother.

(17) The soldier wrote the letter, Exhibit P–4B, to Miss Ethel Barnes, and the said exhibit is made a part of this finding of fact.

(18) The soldier wrote the letters Exhibit P–5a to Exhibit P–5l, and the letters are made a part of this finding of fact.

(19) The soldier stated to his father, about the time that he executed D–4, 5/24/20, that he intended to change his insurance from his wife to his mother.

(20) The soldier told his mother, about the time that he executed D–4, 5/24/20, that he intended to change his insurance from his wife to his mother.

(21) The soldier, at the time he executed Exhibit D–4, had $10,000 of insurance.

(22) At the time the soldier signed Exhibit D–4, he had the right to change the beneficiary or to cancel it to a certain limit. He had no right to additional insurance.

I find facts from 1 to 9, inclusive, and 21 and 22 as requested. I decline to find facts from 10 to 20, inclusive, because they are based on inadmissible evidence or are immaterial.