**MITCHELL v. UNITED STATES et al.**

No. 12139.

Circuit Court of Appeals, Fifth Circuit.

Jan. 14, 1948.

A. Milling Bernstein, of Monroe, La., and Mark Callaway, of Brownwood, Tex., for appellant.

Howell H. Heard and J. Norman Coon, both of Monroe, La., for appellees.

Before HUTCHESON, HOLMES, and LEE, Circuit Judges.

LEE, Circuit Judge.

Appellee, Mrs. Rutledge, widow of Lieutenant Wayne T. Hardwick, brought suit against the United States and Mrs. Mitchell, the mother of Hardwick, to recover on a National Service Life Insurance contract in the amount of $10,000. Prior to the suit, the appellee made claim through the Veterans' Administration and her claim was rejected by the Administration's Board of Appeals. Mrs. Mitchell, the appellant, was interpleaded as party defendant, she being the named beneficiary in the original and only existing certificate of National Service Life Insurance. The insurance was taken out by the veteran, Hardwick, on December 3, 1942, at which time he was unmarried. The district court granted judgment in favor of the widow, and from this judgment the mother, Mrs. Mitchell, has appealed.

Lt. Hardwick and the appellee were married on October 16, 1943, the day upon which he was commissioned an officer, at Monroe, Louisiana. The testimony of the appellee is that on that day Hardwick stated to her that "he had a policy made out to his mother, but since we were married he was taking a policy out in my name." There is no evidence, insofar as the Government records show, of any affirmative act of the Lieutenant actually making a change of beneficiary from his mother to his wife while he was at Selman Field, Monroe. The day following their marriage Hardwick and his wife went to Texas to visit his mother and step-father and spent about a week there. Thereafter he was sent to various training fields, to which posts his wife accompanied him. Toward the latter part of January, 1944, Hardwick was informed that he would be sent overseas for combat duty. At that time he and his wife made a last visit to his parents in Texas, and after that visit Hardwick went to Grand Island, Nebraska, for his final processing for overseas duty, and his wife returned to her home at West Monroe. During the January visit to his parents, Mr. and Mrs. Mitchell, there was some discussion in the family about Hardwick's insurance, but the testimony is conflicting. Mrs. Hardwick was at that time pregnant, and her testimony is that Hardwick, upon finding the insurance certificate in his mother's house, said: "Mother, throw this away, because it is not worth the paper it is written on; I have made out my insurance to Juanita because she is expecting a child and needs it, and I have had it issued to her." The wife testified that Mrs. Mitchell was present, understood, and stated that she also wanted it "to be that way." The mother's story of what occurred is that a conversation took place between herself and her son concerning his life insurance, and that her son's wife was not present. She says that she intended to get the insurance certificate which was in her bureau, but that her son said: "No, you needn't bother about it, because I have got it fixed and you will get yours and she will get hers." The mother says she replied: "But you know I have this paper," and that her son replied: "That is OK, it's just a piece of paper." The mother's testimony is that this conversation was the only one that was ever held between herself and her son with regard to the insurance.

At the time of his final processing at Grand Island, Nebraska, Lt. Hardwick, on February 3, 1944, filled out a Government Insurance Report Form on which he filled in his wife's name as that of beneficiary of his insurance. The original of this document has never been located among the Government records; a copy, however, was received by the deceased officer's wife through the United States Mail from the War Department, mailed at Grand Island, Nebraska. A brother officer and close friend, Lt. Lancaster, who was with Hardwick, standing next to him in line at the time this form was filled out, testified that at that time he did not hear Hardwick state that he desired to make a change of beneficiary or request a form for the purpose; but he further testified that he and Hardwick had had several conversations, both in America and later in England, during the course of which Hardwick had said that before his marriage his mother had been the beneficiary of his life insurance, but that he had changed it so that his wife would be the beneficiary. On February 22, Hardwick wrote his wife from England and said, among other things, "Say, darling, did you ever get your papers for my insur-

ance? You should have gotten it before now." (On the trial the court and counsel differed as to whether the word "your" was "your" or "Gov." or "Govt.")

Appellant's specifications of error are: (1) That the court erred in failing to find that the appellee had failed to maintain the burden of proving that her husband had changed the beneficiary; (2) that the lower court erred in holding that the Government Insurance Report Form was such a positive affirmative act by the deceased within the meaning of the statute as definitely to express his intent to effect a change in beneficiary; and (3) that the court erred in holding the evidence sufficient to establish an affirmative act on the deceased's part in execution of his intention, in view of the National Service Life Insurance Act of 1940, 38 U.S.C.A. § 801 et seq., which sets up a legal standard for the orderly administration of this type of Government insurance.

The case presents only the question as to whether Hardwick's naming his wife the beneficiary on the Government Insurance Report Form can be considered such an affirmative act as to evidence an exercise of his right to change the beneficiary. 38 U.S.C.A. § 802(g) (Insurance Act) provides in part:

"The insured shall have the right to designate the beneficiary or beneficiaries of the insurance * * * and shall, subject to regulations, at all times have the right to change the beneficiary or beneficiaries * * * without the consent of such beneficiary or beneficiaries * * *."

The applicable regulation, No. 3447, of the Veterans' Administration in force at the time reads in part:

"* * * A change of beneficiary to be effective must be made by notice in writing signed by the insured and forwarded to the Veterans' Administration by the insured or his agent * * *."

The cases are unanimous that in war-risk insurance cases involving change of beneficiary the courts will brush aside all legal technicalities in order to effectuate the manifest intent of the insured; and that if he manifests an intent to make a change and has done everything reasonably within his power to accomplish his purpose, leaving only ministerial acts to be performed by the insurer, the courts will treat that as done which ought to have been done and give effect to the insured's intent.[1] The cases are also unanimous that a mere intent to change a beneficiary is not enough. Such an intent must be followed by some affirmative act on the part of the insured evidencing an exercise of the right to change the beneficiary.[2] Where the courts differ is as to the degree of affirmative action necessary to effect a change. Literal compliance with the provisions of a policy is never necessary.[3]

Piecing together the facts as disclosed in the record, we reach the conclusion that the insured, Lt. Hardwick, intended to change the beneficiary of his insurance and did so. Standing alone, the testimony of the widow that on their wedding day, October 16, 1943, at Selman Field, Monroe, Louisiana, her husband told her that he intended to make her the beneficiary in place of his mother would be insufficient to prove either intent or affirmative action. But the filling out by the insured of the Government Insurance Report Form on February 3, 1944, at Grand Island, Nebraska, is strong corroboration of that testimony. Patently, Hardwick intended that his wife should be the beneficiary and believed that he had done what he could to make her such. The fact that nowhere in the Government records is there any record of the transactions accomplished in Louisiana on October 16, 1943, is not necessarily controlling and does not constrain us to hold that no change of beneficiary was effectuated on that day, since the original of the Government Insurance Report Form filled out by Hardwick in Nebraska and filed with the War Department, we know to have been lost. Other important papers and documents may

[1] Bradley v. United States, 10 Cir., 143 F.2d 573; Roberts v. United States, 4 Cir., 157 F.2d 906.

[2] Bradley v. United States, supra; Roberts v. United States, supra; Johnson v. White, 8 Cir., 39 F.2d 793; Egleston v. United States, D.C., 71 F.Supp. 114.

[3] Collins v. United States, 10 Cir., 161 F.2d 64.

also have been lost. The testimony of Hardwick's brother officer, Lancaster, and Hardwick's letter written from England to his wife go to strengthen the evidence not only of Hardwick's intent but also of his belief that he had carried it out.

These insurance cases are difficult of decision. Each must be decided in the light of its own facts. The strict law is that a change of beneficiary must be made in writing and in proper form. Where this has not been done, the courts will brush aside technicalities to give effect to the intention of the insured. It is said that a combination of intent and act is required, but to say in these insurance cases that though intention to change the beneficiary is proved to the hilt, no effective formal act having been done no change can be held to have been made, is not to brush technicalities very far aside. If a man possesssing the degree of literacy required of an officer in the United States Army Air Corps writes, "I have taken out insurance and I have made you the beneficiary," surely it is subserving technicality to say that this is not sufficient evidence of an exercise of his right to change. True, it is not an actual change; but it is strong, almost incontrovertible, *evidence* of a change.

In the case at bar the facts in combination lead irresistibly to the conclusion that the insured, Hardwick, not only intended to make his wife the beneficiary of his insurance, but had also affirmatively acted to make her such.

The judgment appealed from is affirmed.