**McKEWEN v. McKEWEN et al.**

No. 12023.

Circuit Court of Appeals, Fifth Circuit.

Jan. 23, 1948.

Rehearing Denied Feb. 23, 1948.

762

Ross R. Barnett and P. Z. Jones, both of Jackson, Miss., for appellant.

S. M. Graham, of Meridian, Miss., and John W. Savage, Asst. U. S. Atty., of Jackson, Miss., for appellees.

Before HOLMES, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

Appellee, the widow of an Air Corps officer who was killed in the European theater of the war on January 11, 1944, sought to reform, and to recover the proceeds of, a National Service Life Insurance policy issued to her husband on January 28, 1942, wherein the mother of the soldier—appellant here—was named beneficiary. The Court below reformed the policy so as to make the widow, instead of the mother of the veteran, the beneficiary and ordered the proceeds paid to her. The only question is whether or not the soldier in his lifetime effected a change of beneficiary from his mother to his widow.

Appellee relies upon (1) an unsigned will; (2) an unsigned power of attorney;[1] (3) an Officers' Data Sheet; (4) "Government Insurance Report Form"; (5) a completed form similar to the data sheet, signed by the insured upon reporting to his duty-station overseas on December 1, 1943.

No request, as such, to change the beneficiary from the mother to the wife was ever received by the Veterans Administration.

The National Service Life Insurance Act, 38 U.S.C.A. § 801 et seq., gives the insured the right, subject to the rules and regulations of the Veterans Administration, to change the beneficiary without the consent of anyone. Regulation 10.3447 of Title 38, Federal Register, page 8364, Volume 7, being a regulation by the Veterans Administration, provides that:

"A change of beneficiary to be effective must be made by notice in writing signed by the insured and forwarded to the Veterans Administration by the insured or his agent, and must contain sufficient information to identify the insured. Whenever practicable such notices shall be given on blanks prescribed by the Veterans Administration. Upon receipt by the Veterans Administration, a valid designation or change of beneficiary shall be deemed effective as of the date of execution: * * *"

When the insured entered the military service he was unmarried and when he took out a National Service Life Insurance Policy on January 28, 1942, he made his mother, appellant, his beneficiary. Eighteen months later, or on June 25, 1943, he married appellee. Correspondence or statements made before his marriage as to his wishes in reference to the proceeds of his policy lose force after this change in his family responsibilities.

On October 20, 1943, at the Army Air Base at Kearney, Nebraska, Lt. McKewen

[1] The unsigned documents are ineffective and should be disregarded in this case.

filled out and signed the official form furnished by his Government, designated as "Officers' Data Sheet," wherein there appears the following statement:

"Person designated as Beneficiary Marjorie Landes McKewen.

"Relationship Wife. Address: 319 S. Prentiss Ave. Jackson, Miss.

"Total amount class N or D insurance 10,000.

"Class N insurance applied for at this station None.

"Insurance Beneficiary Marjorie Landes McKewen.

"Relationship Wife. Address: 319 S. Prentiss Ave., Jackson, Miss."

Thus, twice in that document he stated, without any ambiguity whatsoever, that his wife was the beneficiary of his $10,000 policy of insurance.

But that was not all that he did. On the same date, and at the same place, Lt. McKewen filled out in duplicate another official Government form at the direction of the Government and which was also delivered to the Government, called "Government Insurance Report Form." This document was addressed as follows:

"To: Mrs. Marjorie L. McKewen      319 S. Prentiss Ave.
        (Name of beneficiary)                    (Street Address)
Jackson Miss.
    (City, State)"

After addressing his wife as "beneficiary" in this form, he stated to her that he had taken out $10,000 of insurance on "1/28/42 * * * naming you as my beneficiary." The date, 1/28/42—which was inserted in the only blank in the sentence—is accurate as to the date on which he took out the insurance, but that cannot be accurate as to the date on which he named his wife beneficiary because that was approximately eighteen months before his marriage. The significant fact here is that he, through an official document, notified his wife that she was the beneficiary of his insurance that he had taken out on 1/28/42. The copy of this Government Insurance Report Form mailed to his wife was not delivered to the Veterans Administration until after her husband's death. The Officers'

Data Sheet and a carbon copy of the Government Insurance Report Form were still in possession of the Government at Kearney, Nebraska, and were turned over by the War Department to the Veterans Administration after the insured's death. But the Adjudicator of the Adjustment Service Unit of the Veterans Administration relied upon these official documents and on September 11, 1944, made a report to the Veterans Administration stating in part:

"There has now been received from the Adjutant General a letter dated August 30, 1944, enclosing certified copies of 'Government Insurance Report Form' and 'Officers' Data Sheet' executed at Kearney, Nebraska on October 20, 1943, by the insured both of which give the name of Marjorie L. McKewen as beneficiary for National Service Life Insurance. No *other request* for change of beneficiary has been found in this Administration or in the War Department.

"It is recommended that the evidence as contained on the 'Government Insurance Report Form' and the 'Officers' Data Sheet' be accepted as a valid change of beneficiary in favor of the widow, Mrs. Marjorie L. McKewen."

On April 21, 1945, the Director of Insurance of the Veterans Administration notified the veteran's widow as follows:

"You are hereby notified that, as a beneficiary of insurance in the amount of $10,-000.00 granted to John William McKewen, Jr. by the United States under the National Service Life Insurance Act of October 8, 1940, as amended, you are entitled to monthly payments of $55.10 beginning November 11, 1944 to and including December 11, 1963."

But that is not all. In addition to the two official documents executed by the insured at Kearney, Nebraska, stating that his wife was his beneficiary, he also executed, at his overseas base in England, on December 1, 1943, a third official document,

called "Officers' Data Sheet," in which he again stated that he had Government insurance in the sum of $10,000 and that the beneficiary was Marjorie L. McKewen, his wife.

The first two of these official documents were executed pursuant to Army orders, rules, or regulations, and these, together with the unsigned will and power of attorney bearing the same date as the official documents, may have been prepared for the purpose of allowing the insured to arrange his affairs before he left this country and before he entered into combat. He may have believed that by the execution of these official documents he had made his wife the beneficiary of the policy, and that it was unnecessary to execute the will and power of attorney in order for her to receive the proceeds of his policy, or he may have learned that a change of beneficiary could not be effected by will. That he might reasonably so conclude is demonstrated by the fact that, initially, the Veterans Administration recognized the two official documents executed by the insured at Kearney as sufficient and as having effected a change of beneficiary and made monthly payments to the widow totalling $953.60 before such payments were suspended on account of the protest of the mother.

It is true that nowhere in the record does there appear any written request by the insured to the Veterans Administration, nor any statement by him to anyone, in so many words, that he had "changed the beneficiary" of his insurance, but there are three official documents executed by the insured— for the information of his Government (the insurer), his widow, and whomsoever else into whose hands the documents might come in due course—stating that his wife was the beneficiary. Although his mother was initially the beneficiary, nevertheless he on three later occasions stated in writing that he had made his wife the beneficiary, and for us now to say that in these documents there was no statement indicating that he had "changed the beneficiary" is to look at form and to overlook substance.

■ We place much stress upon the fact that the two documents signed in Kearney, Nebraska, and the one signed at his sta-tion in Europe, were official documents—signed by an officer of the United States Army on the direction of the insurer, his Government. Assuredly they were not false. The declarations in these documents *are not in the category of unofficial, ex parte*, or oral statements made to the wife or *to the mother in response to inquiries, or in answer to protests* against the making of someone the beneficiary. There is no opportunity here to urge that these documents are fraudulent or that they are forgeries. These declarations are in documents signed in the course of duty by direction of the Government and import genuineness and verity. They were in the hands of the Government—the insurer—and are so nearly the equivalent of "a notice *in writing*" *to the insurer of a change in* beneficiary that we should not cast them aside, particularly in view of the fact that the provisions for written notice of change of beneficiary in such insurance contracts are for the benefit of the insurer and may be waived by it, and particularly in light of the evidence that the insurer here did waive the formal notice as called for by its regulations and paid the widow in excess of nine hundred dollars.

■ The argument that a delivery of these documents to the Army—a branch of the Government—is not a compliance with the regulation that requires the notice to be "forwarded to the Veterans Administration" so as to effect a change of beneficiary will not do because the regulation does not prescribe that the notice must be forwarded by the veteran in his lifetime, or received in the lifetime of the veteran. It requires that the notice must be forwarded by the insured, *or his agent*. It does not require this to be done in the lifetime of the veteran but, on the contrary, provides that upon receipt by the Veterans Administration of the notice of change of beneficiary it "shall be deemed effective as of the date of execution." If, therefore, the documents are sufficient to evidence an intent and an effort on the part of the soldier to change the beneficiary in substantial compliance with the regulation, the fact that these documents were not received by the Veterans Administration until after the death of the soldier is unimportant.

The intention, desire, and purpose of the soldier should, if it can reasonably be done, be given effect by the Court, and substance rather than form should be the basis of the decision where, as here, the soldier's intention to name his wife as beneficiary is evidenced by official documents executed by the soldier and delivered to the insurer. His wishes should not be thwarted by the fact that proof of the use of the prescribed forms for accomplishing his intent was not available. White v. United States, 270 U.S. 175, 46 S.Ct. 274, 70 L.Ed. 530. Cf. Claffy v. Forbes, D.C., 280 F. 233; Roberts v. United States, 4 Cir., 157 F.2d 906.

It seems to us that this case is controlled by an opinion of this Court, rendered on January 14, 1948, not yet officially reported, in the case of Mitchell v. United States et al., 5 Cir., 165 F.2d 758.

In that case the insured was also a lieutenant in the Air Corps who filled out a Government Insurance Report Form in Nebraska, wherein he stated, as did Lt. McKewen in the present case, that he had taken out $10,000 of insurance and that his wife was the beneficiary. The original of that document was never located in the Mitchell case but a copy was received by the deceased officer's wife, through the mail, from the War Department. No relevant document of any sort was found in the possession of the Government and no request in writing for change of beneficiary was ever received by the Veterans Administration. The opinion in the Mitchell case states:

"The case presents only the question as to whether Hardwick's naming his wife the beneficiary on the Government Insurance Report Form can be considered such an affirmative act as to evidence an exercise of his right to change the beneficiary.

\* \* \* \* \* \*

"Piecing together the facts as disclosed in the record, we reach the conclusion that the insured, Lt. Hardwick, intended to change the beneficiary of his insurance and did so. Standing alone, the testimony of the widow that on their wedding day, October 16, 1943, at Selman Field, Monroe, Louisiana, her husband told her that he intended to make her the beneficiary in place of his mother would be insufficient to prove either intent or affirmative action. But the filling out by the insured of the Government Insurance Report Form on February 3, 1944, at Grand Island, Nebraska, is strong corroboration of that testimony."

Further speaking of the statement in the Government Insurance Report Form the Court said:

"If a man possessing the degree of literacy required of an officer in the United States Army Air Corps writes, 'I have taken out insurance and I have made you the beneficiary,' surely it is subserving technicality to say that this is not sufficient evidence of an exercise of his right to change. True, it is not an actual change; but it is strong, almost incontrovertible, *evidence* of a change."

In the Mitchell case the Government Insurance Report Form, which was the only official document in that case, was not in possession of the insurer, as here, and in that case the Veterans Administration had not waived the formal notice nor construed the acts of the veteran as having effected a change of beneficiary.

It was the primary function of the lower Court to draw all the inferences that were appropriate from the evidence in the case in an effort to ascertain the intent of the deceased soldier, and when that intent is evidenced by three separate, distinct, official, and unimpeached documents, wherein he advised the insurer of his intent, and on the strength of these documents the insurer waived the usual and formal notice of that intent, the Court need look no further in the absence of impressive evidence to the contrary.

We should not disturb the finding and judgment of the Court below because there is substantial evidence to support his findings. [Rule 52, Federal Rules Civil Procedure, 28 U.S.C.A. following section 723c.]

Surely the three official documents signed by the deceased at two different times and places, wherein he stated that his wife was the beneficiary, constituted substantial evidence justifying the Court below in drawing the inference that the in-

sured had done all that he deemed necessary in order to make his wife—to whom he owed the legal obligation of furnishing support—the beneficiary of his insurance.

The judgment below is affirmed.