**GANN et al. v. MEEK et al.**

**No. 11964.**

Circuit Court of Appeals, Fifth Circuit.

Jan. 27, 1948.

Rehearing Denied March 12, 1948.

Howard Dailey, of Dallas, Tex., for appellants.

Hardy Moore and T. D. Wells, both of Paris, Tex., and Searcy L. Johnson, Sp. Asst. to Atty. Gen., for appellees.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

This is an action to determine ownership of the proceeds of a policy of National Service Life Insurance issued to Corporal Arthur B. Ervin, United States Marine Corps, who was killed in combat on the island of Saipan during the late war.

The question presented for our determination is whether a change of beneficiary from the wife to the mother was effected. On the trial below a jury awarded the proceeds of the insurance policy to the mother.

It was stipulated by the parties that the certificate or policy of insurance was issued on March 22, 1943, and that the appellee, mother of deceased, was the named beneficiary at the time the insurance was taken out; that Corporal Ervin later married the appellant, whose name was at that time Odena Gladys Good, on July 17, 1943, and

made formal request for change of beneficiary from his mother to his wife on August 24, 1943; that on April 29, 1944, Ervin wrote his brother, Harley Ervin, nicknamed "Bud", a letter in which he stated that he had changed the beneficiary of his policy from his wife to his mother.[1]

The evidence shows that Ervin married the appellant while home on sick leave, and that he remained at home only a few days when he again joined his command in the South Pacific; that he saw combat service at Pearl Harbor, Guadalcanal, and the Marshall Islands, that he was wounded on Kwajalein Atoll and evacuated to the hospital at Honolulu, and was awarded the Purple Heart and Navy Cross by Admiral Nimitz, and was killed on the island of Saipan.

■ If the letter written by Corporal Ervin to his brother was all the evidence upon which to predicate a decision we would conclude that it was not enough to carry the case to the jury. But the letter did not constitute the only evidence. Corporal Maurice Crawford and the deceased, Arthur Ervin, both served in the Marine Corps during the late war, and while they were not in the same command, they each served in the same combat area at about the same time Ervin was killed. Crawford testified that everything in that area was in a state of confusion, and that mail service was irregular and loss of mail frequent. This evidence was further substantiated by that portion of Ervin's letter wherein he somewhat ironically and subtly stated, "Received your letter last nite (somewhat delayed)." Moreover, the conditions surrounding and governing the movement of the mails in the combat areas of the South Pacific where the Marines were spearheading the invasions from island to island were of common knowledge; letters written by the Marines were first lodged with a company clerk, or someone else designated in each company to receive them; thereafter they were usually censored by an officer, and then forwarded by the first available government transportation to the Fleet Postoffice, San Francisco, California, from which point they were relayed to their final address in the United States. It was also common knowledge that many ships and planes carrying mail to and from the United States were sunk and shot down, and all mail aboard irretrievably lost. Moreover, it was a well known fact that, during this period, mail piled up in the offices of the Veterans Administration at Washington until months elapsed before requested changes of beneficiary were made, and during the interim period many letters were either misplaced or lost. Certainly the evidence presented, when viewed in the light of facts constituting common knowledge, made a jury question as to whether Ervin had done all he

---

[1] "Hello Bud                April 29th

"I'm sorrow that I have not written to you long before this—Received your letter last nite (somewhat delayed) So will ans. right back  How are things going with you these days—Kay, holding you down—me—I couldn't be better as you probably know by this time I'm back to duty with my old company, certainly was glad to get back with the guys again my side is O. K. now and I can do allmost everything I did before, It never bothers me in the least, Guess you know that it was close, Lavada wrote me a letter just before she went to Seattle, and I'm looking for the Chief out this way any day now, By just reading your letter over I can't tell wheather or not you like the idea of waiting so long, you got a break in a way, I got a letter from Mom every 4 or 5 days Speaking of Mother Bud I did change my insurance if any one gets it Mom will get it all, I didn't change it because of what you said in your letter, I had allready for a couple reasons of my own, one I don't want 'Neg' ever to feel obligated to me, but I know that neither you or Kay would and never did lie to me  So I want to ask you something, but before I ask you I want to tell you how I feel about 'Neg'. Bud she is the only one for me but things are all the way oka not at all, know what I mean? Write me and tell me if things are not that way. I don't want to plan on something and things go haywire, Let me know, Bud I have some good news for you, Do you know what the "Navy Cross" is? I was awarded the "Navy Cross" by Admiral Nimitz last Wed. I am dam proud of it and Sending it home to Mother  Wish you could have been here Bud to have seen me get it  Wonder what H. L. will think? Kay I'll send you that hula skirt this time if I can find a good one, Gotta close now will be waiting for your ans. Love to you both

"Your brother

"Cpl Arthur B. Ervin."

reasonably could to effect a change of beneficiary. From this evidence the jury could reasonably have inferred that Corporal Ervin did request the Veterans Administration to change his beneficiary from his wife back to his mother, and that his letter of request was lost in that maelstrom of carnage and death on the island of Saipan.[2]

It is well settled that mere intention alone, no matter how strong, is not sufficient to effect a change of beneficiaries in an insurance policy. But where, as here, abundant evidence is introduced to show that the insured soldier has done all he reasonably could to comply with the change provisions of the policy, justice requires that we invoke equitable rules in order to give effect to a plainly manifest intent. Gifford v. United States, D. C., 289 F. 833; Reid v. Durboraw, 4 Cir., 272 F. 99; Bradley v. United States, 10 Cir., 143 F.2d 573; Claffy v. Forbes, D.C., 280 F. 233; Roberts v. United States, 4 Cir., 157 F.2d 906; Woods v. United States, D.C., 69 F.Supp. 760.

The cases of Bradley v. United States, 10 Cir., 143 F.2d 573, and Collins v. United States, 10 Cir., 161 F.2d 64, relied upon by appellant, are not in conflict with our holding here. In both of these cases the statements of the soldiers, and the circumstances under which the statements were made, were very different from this case. In the Bradley case the soldier was killed while stationed at Windsor Locks, Connecticut. It was not even contended that he had executed or even tried to execute a change of beneficiary, and it was proved that he had stated to his wife while they were in California that he would attend to the matter of changing his insurance when he got to Connecticut. Here Corporal Ervin wrote his brother shortly before his death, not that he wanted or intended to change his beneficiary, but that "* * * *I did change my insurance if any one gets it Mom will get it all, I didn't change it because of what you said in your letter, I had allready for a couple reasons of my own, * * *." (Italics supplied.) The above statement in Marine Ervin's letter, which was admitted-

ly genuine, considering the circumstances under which it was made, is almost equivalent to a dying declaration. Ervin knew how to change the beneficiary of his policy, since the record shows without dispute that he had changed it once before. His statement, therefore, cannot be called a conclusion or opinion, but warrants the inference that he had already written the Veterans Administration requesting such change before he wrote this letter. To hold otherwise is but to dispute the sanctity of a soldier's word on the field of battle, as evidenced by a letter to his own brother.

The facts of this case bring it within the orbit of Roberts v. United States, 4 Cir., 157 F.2d 906. If, as a matter of law, there was a change of beneficiary in the Roberts case, it cannot with reason be said as a matter of law that there was no change of beneficiary in the case at bar. Moreover, this case is much stronger than the Roberts case. There the insured was a Naval officer stationed at Jacksonville, Florida, where he had the time and all facilities to change the beneficiary in his policy, whereas this Marine was on Saipan engaged in a fight to the death.

Collins v. United States, 10 Cir., 161 F.2d 64, bears us out in the holding that literal compliance with the provisions of an insurance policy similar to the one in question is never absolutely necessary.

It is admitted that the quoted letter from the dead Marine Ervin to his brother was genuine. Moreover, it was stipulated that the letter constituted part of the evidence in the case. We are of opinion that it was admissible. May v. Brown, 144 Tex. 350, 190 S.W.2d 715, 717, 720, 165 A.L.R. 1180; McElroy v. Phink, 97 Tex. 147, 76 S. W. 755; Gaines v. Relf, 12 How. (U.S.) 472, 13 L.Ed. 1071; Re Jessup, 81 Cal. 408, 21 P. 976, 22 P. 742, 1028, 6 L.R.A. 594; Mutual Life Ins. Co. v. Hillmon, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706.

It therefore becomes manifest that this case presented a question for the jury as to whether Corporal Ervin had done all

2 "* * * the original of the Government Insurance Report Form filled out by Hardwick in Nebraska and filed with the War Department, we know to have been lost. Other important papers and documents may also have been lost. * * *" Mitchell v. U. S. et al., 165 F.2d 758. Cf. Chichiarelli v. United States, D.C., 26 F.2d 484, 486.

he reasonably could to effect a change of beneficiary from his wife to his mother.[3]

We find no reversible error in the record and the judgment is affirmed.

SIBLEY, Circuit Judge (dissenting).

Arthur B. Ervin was a corporal in the Marines, having enlisted in 1940. He was at Pearl Harbor when the Japanese attacked on December 7, 1941. He had a certificate of National Service Life Insurance for $10,000 payable to his mother Mrs. Willie B. Meek, now Mrs. McGuyer. While on a furlough in the United States on July 17, 1943, he married Odena Gladys Good. On August 24, 1943, on a formal request his wife was made beneficiary of the insurance. After a treatment in a hospital he went again overseas in January, 1944. Under date of April 29, 1944, in reply to a letter from his older brother who, though in the Naval Service, was in the United States, he wrote and signed a letter which was received, the material part of which is as follows:

"I am sorry that I have not written to you long before this. Received your letter last nite (somewhat delayed) so will ans. right back * * * I am back to duty with my old Company. Certainly was glad to get back with the guys again. My side is O. K. now and I can do almost everything I did before * * *. I got a letter from Mom every 4 or 5 days. Speaking of Mother Bud I did change my insurance if anyone gets it Mom will get it all. I didn't change it because of what you said in your letter. I had already a couple of reasons of my own, one I dont want 'Neg' ever to feel obligated to me, but I know that neither you or Kay would and never did lie to me. So I want to ask you something, but before I ask you I want to tell you how I feel about 'Neg.' Bud she is the only one for me but things are all the way O. K. not at all, know what I mean? Write and tell me if things are not that way * * *."

The letter tells of the writer being awarded the Navy Cross by Admiral Nimitz the week before, and that he was sending it home to Mother and would send Kay a hula skirt if he could find a good one. "Neg" is identified as Ervin's wife, and Kay as his brother's sweetheart. The letter does not show where it was written. It makes no mention of present fighting or loss of mail or confusion of any kind. The Navy Cross was received by the mother and the letter was received by the brother. Ervin was killed in action in the attack on Saipan on July 5, 1944, over nine weeks later. No change of beneficiary communication was received by the Veterans Administration after the change to the wife in August, 1943. On November 3, 1944, the mother filed claim to the insurance. On Nov. 4 the wife filed her claim. The Veterans Administration decided on July 21, 1945, that the wife was the beneficiary. The mother, Mrs. Meek, filed suit against the United States and the wife to recover the insurance. The United States by answer set up the facts touching the insurance as known to the Veterans Administration and the decision that the wife was the beneficiary, and that the mother was also claiming, and that by reason of the conflicting claims the money could not be safely paid to either, and prayed a determination by the Court. The wife set up the same facts and claimed the insurance.

On the trial the facts as above stated appeared in the main by stipulation. The mother was a witness, but testified nothing as to the wife, or the son's attitude to her. The brother testified, but only to identify the letter and the persons referred to in it. He had never seen his brother's wife but once. He turned the letter over to his mother after his brother's death became known. The only other witness was another Marine who served in the South Pacific, but not in the same company or division as Ervin, and did not fight on the same islands. Identifying no time or place, he testified that his mail was irregular, and that mail was sometimes lost and ships sometimes sunk which carried mail, and that in changing insurance beneficiaries the custom was to go to the company clerk and make out papers and the clerk would send them to the Veterans Administration. The wife objected to the admission of all this testimony as irrelevant, and especially to the letter as not sufficient to change the beneficiary or to show that a change had been made, and also moved for a directed verdict. She offered

---

[3] McKewen v. McKewen et al., 5th Cir., 165 F.2d 761.

no testimony beyond the stipulation of facts. The jury found for the mother. From the resulting judgment this appeal was taken.

1. The decision of the Veterans Bureau that the wife continued to be the beneficiary is not final in court. 38 U.S.C.A. § 808. But it does show that there has been *no waiver* on the part of the insurer of anything necessary to effect a change of beneficiary.

2. The Act which defines and controls the insurance provides as to change of beneficiary: "The insured shall have the right to designate the beneficiary or beneficiaries of the insurance, but only within the classes herein provided, and shall, subject to regulations, at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries but only within the classes herein provided." 38 U.S.C.A. § 802(g). How the change of beneficiary shall be made is left to regulation. As the regulation stood in 1943 and 1944, pertinent provisions are: Sect. 10.3446. " * * * An original beneficiary designation may be made by last will and testament duly probated, but no change of beneficiary may be made by last will and testament." Sect. 10.3447. " * * * A change of beneficiary to be effective must be made by notice in writing signed by the insured and forwarded to the Veterans Administration by the insured or his agent and must contain sufficient information to identify the insured * * *." 7 F.R., page 8364. No one contends the regulation is not valid. Made by the authority of the statute, it has the force of law. The provision is simple and plain. Judges and juries would like to effectuate the last wish of a soldier, and much has been said in the cases that this intention ought to be carried out. But his last will and testament, though formally executed in writing and attested, is expressly made ineffective. Instead a notice in writing signed by the insured and forwarded to the Veterans Administration by the insured or his agent is required. No doubt receipt of the notice before death is not required, nor the use of the form provided; and the formal identification of the insured above mentioned, being for the aid of the Veterans Adminis-

tration, can be waived by it. But the written, signed notice to the Veterans Administration is declared necessary, and it must be forwarded, as a sort of delivery, by the insured or his agent. And all the cases agree that the expression of a wish or intention to change the beneficiary, no matter how clearly proved, is insufficient unless the insured *does some act* to that end. Some of them assert that if he does all he reasonably can, it is enough even though it is not a written notice to the Veterans Administration signed and forwarded. Insurance law in general requires only substantial compliance in such matters, and we may well say the same is true in this insurance.

But there is here no proof of any compliance or attempt at compliance. The informal family letter from the insured to his brother, who apparently was trying to get the insurance changed back to the mother, was not intended to be a notice to the Veterans Administration, nor was it forwarded by insured or his agent to it. It was a letter to his brother, and nothing more. It is wholly ineffective to change the registered beneficiary of the insurance.

But it is argued that it is evidence that he had changed it. He said he had, but it is an unsworn statement, not made in the presence of either of the contesting parties, and neither he nor his estate is a party to this case. It is not the statement of a deceased person against his interest at the time, for he had no financial interest that was prejudiced thereby. It is merely hearsay, res inter alios acta, not binding on the parties before the court. Moreover, it is vague, not indicating what he had done, and is a mere expression of opinion that he had done something that changed his insurance, we know not what. A verbal statement would be evidence if this letter is, but surely a change of beneficiary is not provable by a verbal statement.

The argument is next made that he knew how to change the beneficiary because he had done it before, and we must say or may conclude that he did make and sign a written notice to the Veterans Administration and forward it, but that it was not received because of the turmoil of the fighting front or the sinking of vessels. This is all speculation and guess. There is no evidence

that there was turmoil and loss of mail where he was in April, 1944. He got his mother's letters, he got his brother's letter, and his brother got the letter in question, and his mother got the Navy Cross, mailed at the very time and place. It does not appear that *his* company ever lost its mail, the witness who testified being in another company on another island, and at an unfixed date. If there was any proof that Ervin had mailed a letter to the Veterans Administration about the date of the letter to his brother, the latter might be admissible to show intention, or even to show the probability that the letter to the Veterans Administration did relate to the insurance, and the sinking of ships might explain the fact that the Veterans Administration did not receive its letter. But there is not a shred of proof that he ever forwarded any letter to it. Possibly he did, but there is no legal proof.

The case rests wholly on the letter of April 29, 1944, and it proves only that Ervin said he had changed the beneficiary; and that is hearsay as respects his wife. The letter should have been excluded from evidence and the verdict should have been directed for the appellant.

I must take issue with the assertion in the majority opinion that "it was stipulated that the letter constituted part of the evidence." The stipulation was this: "The following is a true and correct copy of a letter written wholly in the handwriting of Arthur B. Ervin on April 29, 1944, to his brother Harley Ervin, nicknamed Bud, and that the original letter is in the possession of Charles L. Chandler, Bureau of War Risk Litigation, Department of Justice, U. S. Postoffice, Springfield, Missouri, who was expected to be here, but has been unavoidably prevented from attending." This stipulation merely substituted the copy for the original letter and admitted the genuineness of the original. It did not waive objections to the admission in evidence of the letter, and no one so contended when the copy was offered in evidence, and objected to for reasons other than its being a copy.

It seems to me that this case, far from sustaining the insured's right to change the beneficiary "subject to regulation," sustains a change regardless of the regulation and on

a vague declaration not made under oath nor subject to cross-examination which is only an opinion and does not show what, if anything, had really been done. Are we to invent rules of evidence applicable only to soldiers in time of war? Are we to imagine "the maelstrom of carnage and death on the Island of Saipan" had anything to do with this matter, when it appears only that the soldier was on Saipan nine weeks later, and it does not appear where he was when he wrote this letter, nor where he was when he said he had changed his insurance? We carry romantics too far in doing so.