### KELL v. UNITED STATES et al.

#### Civ. A. 2596.

United States District Court
W. D. Louisiana
Alexandria Division.

May 7, 1952.

W. T. McCain, Colfax, La., and J. Norman Coon, Monroe, La., for plaintiff.

Polk & Culpepper, Alexandria, La., for Davis.

William J. Fleniken, U. S. Atty., and Leland H. Coltharp, Jr., Asst. U. S. Atty., Shreveport, La., for United States.

PORTERIE, District Judge.

Ralph O'Dell Kell joined the United States Navy on September 10, 1943, and on that date named his mother as next of kin and his sister, Mrs. Davis, defendant herein, as beneficiary for the purposes of payment of the six months' death gratuity. On September 23, 1943, he obtained a National

Service Life Insurance policy for the sum of $10,000 and designated his sister, Mrs. Davis, as his beneficiary.

Plaintiff's cousin, James Ferrier, was a shipmate of Kell aboard a destroyer, the United States Ship Monaghan (DD-354). In her correspondence with Ferrier, plaintiff sent him her picture, which Ferrier showed to Kell, and which developed a correspondence between plaintiff and Kell. In September of 1944 Kell and Ferrier obtained an annual leave from the USS Monaghan and both came to Montgomery, Louisiana—Ferrier's and plaintiff's hometown. Kell immediately met plaintiff and her parents and relatives and, after one week's courtship, they were married by a justice of the peace on September 15, 1944, and a day or so later by a priest in Montgomery, Louisiana, Kell and plaintiff being Catholics. Plaintiff and Kell were then 19 years of age. They lived together for approximately eight days after which time Kell returned to his ship at Seattle, Washington.

In a letter to plaintiff upon his return aboard ship, dated September 30, 1944, Kell wrote this:

"* * * I will tell you that I gave James [Ferrier] a good whipping for he made me come back to the ship two days early when I could have spent them at home with you. Honey I haven't had a chance to get the rings yet for we haven't been paid. I ask[ed] the paymaster if I could get a special [sic] paiday but he said he was busy and that he would let me know when ever I could get paid.

"*I had my Insurance changed to your name.* I am trying to get an allotment out but the pay master said I would have to write to Washington, D. C. so I sent a letter to them about 3 days ago so I should get an answer before long. Honey you had better have your name changed at the P. O. so you can get your mail under your real name. * * *" (Emphasis ours.)

Within a month after receiving this letter, plaintiff began to receive an allotment of $50 per month from Kell and the Government.

The record discloses that, since his letter of September 30, 1944, Kell wrote plaintiff four others, dated October 12, October 25, November 3, and December 7, 1944. It is only in his letter of September 30, 1944, immediately after his return to his ship from his honeymoon, that Kell ever mentions insurance. In none of the others of record does he say anything about it.

The smooth deck logs of the USS Monaghan shows its pertinent itinerary as follows:

Departed Seattle, Washington, on October, 1, 1944, and arrived at San Pedro, California, on October 4, 1944; departed San Pedro, California, on October 4, 1944, and arrived Pearl Harbor, T. H., on October 10, 1944; departed Pearl Harbor, T. H., on November 11, 1944, and arrived Eniwetok Atoll, Marshall Island, on November 18, 1944; departed Eniwetok, Marshall Island, on November 18, 1944, and arrived Ulithi Lagoon, Caroline Island, on November 21, 1944; departed Ulithi, Caroline Island, on November 30, 1944. The smooth deck log of the USS Monaghan for December, 1944, was lost when that vessel was sunk in a marine disaster.

The USS Monaghan and two other destroyers of a flotilla were sunk by a typhoon in the China Seas on December 18, 1944. Kell and all but six of the Monaghan's company or crew lost their lives in the catastrophe. Not one of these survivors knew anything about Kell's insurance.

The records of the Navy Department show that Kell had applied for and was receiving family allowance benefits for her. That Department timely notified plaintiff of her husband's death and later sent her the money due Kell for pay, subsistence, and transportation. Also, plaintiff receives a death pension as unremarried widow of Kell.

In the meantime, the Veterans Administration was paying the benefits under Kell's policy to the designated beneficiary, Mrs. Davis.

Plaintiff then made a demand upon the Veterans Administration for the benefits

as beneficiary under Kell's policy on the basis of what Kell wrote to her on September 30, 1944. The Veterans Administration thereupon checked its files completely and had the Navy Department search out all of Kell's records and those of the USS Monaghan, etc., in order to ascertain whether or not Kell had actually changed his beneficiary. Finding no change, the Veterans Administration denied her claim:[1] Mrs. Davis was already paid $2,320.60 before the Government stopped payment to anyone pending the outcome of this action.

Contending that the sentence: "I had my Insurance changed to your name" in Kell's letter to her plus her evidence to the effect that Kell stated prior and after his marriage to her that he was going to make an allot-

ment to her and make her the beneficiary under his policy is sufficient to change the beneficiary on his policy from his sister, Mrs. Davis, to herself, plaintiff sued the United States and Mrs. Davis to have such change declared judicially and to recover the benefits as beneficiary.

A motion by Mrs. Davis to dismiss was filed and the Court ordered the case tried on the merits to ascertain all facts. The case was tried without a jury. On her brief on the merits complainant submitted " * * that there should be Judgment in favor of the Plaintiff as prayed for less and except the amount that the Government has already paid under the policy." For that reason, the Government filed a "Memorandum to the Court"[2] admitting its lia-

---

1. On March 29, 1946, the Veterans Administration wrote to Mrs. Kell, plaintiff, regarding its decision, as follows:

"Further reference is had to the National Service Life Insurance granted the above-named deceased serviceman [Kell, Ralph O'Dell XC–3,872,431].

"As you were previously advised, the sailor was granted $10,000 of insurance for which he designated Juanita Kell Jenkins, sister, sole beneficiary.

"In view of the evidence submitted by you, a search was instituted of the records of this Administration as well as the records of the Navy Department. A thorough and exhaustive investigation of all available records has failed to locate either a change of beneficiary executed by the insured or any record of a request for such change.

"The letter addressed to you by the insured dated September 30, 1944, may not be considered a change of beneficiary. The National Service Life Insurance Act of 1940, as amended, 38 U.S.C.A. § 801 et seq., and the applicable regulations covering the right to change a beneficiary provides that a change of beneficiary to be effective must be made by notice in writing, signed by the insured and forwarded to the Veterans Administration by the insured or his agent. The expressed intention of the insured to change the beneficiary standing alone and unaccompanied by evidence of some affirmative act on his part to effect a change is insufficient to establish a change of beneficiary.

"In the settlement of insurance claims, this office is bound by the provisions of existing law and pertinent regulations

and all settlements must be made in strict conformity therewith.

"Inasmuch as neither a change of beneficiary executed by the insured nor any evidence of a request for such change has been located, the insurance must be awarded to the beneficiary of record.

"It is believed that you will, therefore, understand that you are not the beneficiary and that the insurance is not payable to you but to Juanita Kell Jenkins, the insured's sister.

"Unless some tangible evidence or further material representation to the contrary is received from you on or before April 30, 1946, it will be assumed that you so understand the matter and action will proceed looking toward payment to Juanita Kell Jenkins, sister, as the beneficiary of record. * * *"

On March 23, 1948, practically two years later, plaintiff wrote the Veterans Administration requesting information with the view of getting a final determination of her claim preparatory to filing this action. Her letter was acknowledged on April 9, 1948, and she was sent Form 355 to execute and thus file a formal claim. And on May 10, 1948, the Veterans Administration disallowed her claim anew. Whereupon this action was filed on March 17, 1949.

2. The Memorandum reads as follows:
"The evidence in this case clearly proves that defendant, the United States of America, paid the sum of Two Thousand Three Hundred Twenty and 60/100 ($2,320.60) Dollars to Mrs. Juanita Kell Jenkins in good faith and only after it appeared that plaintiff had abandoned her claim to be recognized as beneficiary.

bility for the overplus to whichever litigant prevails in this action and the Government now is a mere stakeholder.

The decisive issue now is whether plaintiff's evidence is sufficient to change the beneficiary, from that of the one designated, to herself, and thus entitle her to receive the balance due under the policy from the Government.

In order for plaintiff to prevail here as substituted beneficiary, she must prove by a preponderance of the evidence, (a) that Kell manifested a real intention to change the beneficiary originally named in his policy; and, (b) that Kell had done an affirmative act to effectuate that intention. Mitchell v. United States, 5 Cir., 165 F.2d 758, 2 A.L.R.2d 484; Shapiro v. United States, 2 Cir., 166 F.2d 240; Boring v. United States, 10 Cir., 181 F.2d 931, and cases there cited.

The proof of Kell's intention to change is conflicting.[3] All doubt as to his intent is not removed by this letter of September 30, 1944, to his bride.[4] The view we take regarding his alleged affirmative action to effectuate that assumed intention obviates the necessity of our resolving that conflict and deciding his intention as a fact, under all circumstances of this case.

For us to find as a fact that Kell took some affirmative action, we have to positively conclude, not only that what he wrote on September 30, 1944, to his bride was his intention and the truth, but also that the Executive Officer and the Paymaster then aboard the Monaghan and all personnel under their jurisdiction in dealing with beneficiary changes and the handling of the mail aboard the Monaghan were derelict in their prescribed duty of sending the original of the change, or the request to change, off the ship to the Veterans Administration office in Washington, D. C., while their ship was moored at Seattle, San Pedro, Pearl Harbor, etc., points which are, or practically are, in the United States and

In the event that this court should hold that plaintiff is the true beneficiary, the defendant, on the basis of the evidence adduced at the trial, should be discharged from further liability for the payments previously made to Mrs. Juanita Kell Jenkins.

"Recognizing the good faith of the United States, which we feel they must, counsel for plaintiff assert in their brief that the court should enter judgment in favor of plaintiff as prayed for 'less and except the amount that the government has already paid under the policy' sued on. Inasmuch as plaintiff seeks judgment only for the unpaid portion of the insurance proceeds and the government admits its liability on the policy to that extent, defendant now assumes the role of a passive stakeholder and awaits the decision of this court as to whether plaintiff, Mrs. Eva Beatrice Kell, or defendant, Mrs. Juanita Kell Jenkins, is entitled to the unpaid proceeds."

3. Mrs. Davis testified: "I saw a letter which was received from my brother [Kell] stating: 'Mom, I am making Eva B. an Allotment and leaving my insurance as is.'"

Kell's mother testified that she received a letter from Kell in October, 1944, a month after he married plaintiff wherein he referred to the insurance and said: "Mother, I have a sweet little wife and I

love her very much but that will never change the insurance. The insurance will stay as it is because I am going to make Eva B. the allotment."

Plaintiff testified that her husband talked about this change of beneficiary in the presence of her father, mother, sisters and uncle.

One Murphy Milling, of Montgomery, Louisiana, testified that Kell told plaintiff and him, while the three of them were in an automobile in front of the church, shortly after the priest married the two, that he was going to change his beneficiary to plaintiff.

Mr. Nealy Roberts, plaintiff's father, testified that Kell told him the third day after the marriage and before leaving to return to his ship that he was going to make Eva an allotment and change the insurance beneficiary to her.

4. "The evidence which this writer would consider the weakest is the testimony of, or letters written to, the substituted beneficiary. The weakness of such evidence lies in the fact that the insured may, for some reason or other, see fit to indicate either in conversations with, or in letters to, the person vitally interested in the change, that he attempted to effect such change although actually he never contemplated such a change. Obviously, such evidence lends itself also easily to fraud." 2 A.L.R.2d 500, Sec. 8.

removed thousands and thousands of miles away from any battle area at that time. That there was mail service from the Monaghan for over two months after the letter of Kell of September 30, 1944, is proved by plaintiff's own exhibits.

The record is devoid of proof of any affirmative action. The record shows affirmative action on the allotment made by Kell to plaintiff, which is alleged to have been made at the same time that the alleged change of beneficiary was executed.

 We have compared the facts of this case with the facts of all those cases cited to us and others found in our research. We believe that to permit the plaintiff in this case to prevail, under her facts, would be going out further than has ever been done before in those cases cited to and found by us.

We analyze and compare cases; this is a part of the science of jurisprudence. The question at issue here is when has there been and when has there not been a change of beneficiary. The only safe procedure for the Court is not to lose itself in the analysis of cases; it should, once in a while, come back to the statute and the regulations thereunder—not to be led astray therefrom by the charity of expression by which a Court may be moved in each case of this character.

Judge Sibley, greatly noted for this very saving anchor in his decisions, in his dissent in the case of Gann v. Meek, 5 Cir., 165 F.2d 857, 860 et seq., tried to a jury, goes to the statute and its regulations. He says the majority carries "romantics too far". 165 F.2d 857, 862. For us to accept the Gann case, supra, as controlling in the instant case would be, we believe, to go still further away from the moorings. We would be out further in romance than is found in the Gann case, supra.

Seriously, what is the more to be condemned is that the Court is legislating when it leaves the clear and unambiguous meaning of the statute and the regulations. Step by step, case by case, one gets further and further away from the statute and the regulations; until they are all but gone!

In the year 1926, the writer of this opinion, as an advocate, successfully upheld a change of beneficiary—from wife to mother—in the case of Peart v. Chaze, D.C., 13 F.2d 908, 913, based upon a "notice in writing to the Bureau of War Risk Insurance, signed by the insured". Two letters of the insured veteran, *addressed to the Treasury Department*, are quoted in the opinion. We would not at that time have even contemplated a suit based on a letter written by the veteran to the substituted beneficiary. The statute and regulations then and the statute, 38 U.S.C.A. § 802(g) and regulations, 7 F.R., page 8364, Sec. 10.3446–3447 now applicable are of substantial indentity in regard to change of beneficiary requirements.

Section 10.3447 provides: " * * * A change of beneficiary to be effective must be made by notice in writing signed by the insured and forwarded to the Veterans Administration by the insured or his agent and must contain sufficient information to identify the insured * * *".

We will sign a judgment consistent with the above in favor of defendant, Mrs. Davis and the United States, upon presentation.