**Imajean HAWKINS, Appellant,**

v.

**Bertha Lue HAWKINS et al., Appellees.**

**No. 17775.**

United States Court of Appeals
Fifth Circuit.

Nov. 23, 1959.

---

Donald B. Howe, Buchanan, Ga., James I. Parker, Cedartown, Ga., Howe & Murphy, Buchanan, Ga., for appellant.

W. Wallace Shafer, Lakeland, Fla., Robert F. Nunez, Tampa, Fla., Bentley, Shafer, Miller & Sinder, Lakeland, Fla., for appellee.

Before RIVES, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a summary judgment in favor of a former wife of a serviceman to whom the trial court awarded the proceeds of a National Service life insurance policy as against the second wife to whom he was married at the time of his death. The United States appeared in the litigation merely in the guise of a stakeholder.

The deceased veteran Hawkins was married to Bertha Lue when he took out the insurance policy on August 1, 1950. He named Bertha Lue and his son, Gary, equal beneficiaries, subsequently, on August 28, 1950, in accordance with the requirements of the contract of insurance, by notice in writing to the Veterans Administration, Hawkins executed a change of beneficiary whereby Bertha Lue was named as sole primary beneficiary. In September, 1951, Hawkins obtained a divorce from Bertha Lue on the grounds of adultery, and the court granted him custody of their two children.

Subsequently Berth Lue caused the court to grant her custody of the children on June 25, 1954, but Hawkins followed this by causing the court, on July 1, 1954, to vacate the said order as having been obtained by fraud, and the children were again awarded by court order to Hawkins.

In the meantime, on June 1, 1954, Hawkins married Imajean. The insured serviceman died in Germany on March 22, 1955. On that date there were no records either in the Veterans Administration or in the Department of the Army of any written request by Hawkins for a change of beneficiary from his divorced wife to Imajean.[1]

Prior to his embarkation for overseas duty on September 15, 1954, the serviceman executed Department of the Army AGO Form 41, captioned "Record of Emergency Data for the U.S. Army." It furnished the name of Hawkins' then wife, Imajean, her address, the names of his children and others to be notified in event of his death. It then provided, in completion of the following printed form:

"In the Event that I Am Not Survived by Spouse or Eligible Child, or if Their Decease or Disqualification Occurs Before Payment of the 6 Months Gratuity, I Then Desire that Payment be Made to the Dependent Relative Shown Below:

"Imajean (NMN) Hawkins * * *Wife.* (Emphasis added.)

Further down, after a provision of space for listing commercial life insurance companies which he wished to have notified (which he completed by entering

---

[1]. The policy in question provides under the provisions "6. Beneficiaries," as follows:

"The Insured has the right at any time to designate the beneficiary under this policy, or to change the beneficiary without the knowledge or consent of any beneficiary. The designation or change, to be effective, must be made by a written notice signed by the Insured, and must contain sufficient information to identify the Insured. The notice must be forwarded to the Veterans Administration by the Insured or his agent * * *"

"None") there was the following printed matter:

"In the Event that I Am Listed as Missing, or by Other Military Circumstance Am Unable to Transmit Funds to My Dependents, it is My Desire that—

16. First Name—Middle Name—Last Name     Relationship
     Imajean    (NMN)    Hawkins        Wife
    Address (Number, Street, city, and state)  Receive each
                                       month
    Route No. 1      Ben Hill, Ga.      100% of my pay
    Military Address                 Date Received
    Co.S 1264th SU o/s Repl Stat     14 September 54
    Cp. Kilmer, N. J.     /s/  J. C. Hawkins"

———◆———

Sergeant Hawkins had previously filed such a form in which he had designated Bertha Lue as the intended recipient of his six months gratuity, if he was killed. It is clear therefore that the filing of this form revoked such designation for Bertha Lue and made provision for Imajean. However, this six months gratuity is payable only to surviving spouse if there is one, and thereafter only to other specified dependent relations, such as children, etc. in the order prescribed in the statute, and under no circumstances would Bertha Lue be entitled to the gratuity even though the new form had not been filled out since she was no longer the soldier's wife. It is not clear, therefore, what purpose was served by the filing of this form. In support of her motion for summary judgment Bertha Lue attached an official copy of the decision of the Board of Veterans Appeals of the Veterans Administration resolving the contest here in favor of Imajean. This report outlines the evidence of Hawkins' intent to cause the proceeds of the policy to go to Imajean rather than to the divorced wife and this intent was also averred by affidavits attached to Imajean's answer to the motion for summary judgment. This evidence, as recited in the findings of the Board of Veterans Appeals is:

" * * * Information from an official source shows that in September 1952 the veteran applied for a discharge from service in order to be reunited with, and establish a home for, his two children, Gary and Patricia. In connection with this request, the veteran asserted that he had received a divorce from Bertha after she had deserted the children while he was overseas, and that the children were living with friends, Mr. and Mrs. Newman Freeman. Other evidence in file is to the effect that after the veterans' remarriage, Gary and Patricia lived for a time with the appellant, and that prior to his death in Germany the veteran had taken action to have all three of his children and the appellant join him in Germany.

*    *    *    *    *    *

"The appellant has furnished a letter written to her by the veteran on September 17, 1954, in which he expressed deep affection for her and stated in part that he had just authorized an allotment payable to her. * * * Sworn testimony was adduced to the effect that on occasions the veteran had expressed the thought that in the event of his death, the appellant would be well 'taken care of.' Newman Freeman executed an affidavit in behalf of the appellant, stating therein that in about December 1954, just prior to going overseas, the veteran expressed himself to the effect that he had effected a change of beneficiary in favor of the appellant with respect

to his Government insurance. The veteran's mother has also set forth under oath that about December 1954 or early January 1955 the veteran told her he had 'changed everything to Imajean.' "

An affidavit signed by a former fellow soldier avers that Hawkins told him that his wife, Imajean, was his Government insurance beneficiary.

A counter affidavit by Bertha Lue stated that in August, 1954 (less than two months after Hawkins had caused a custody order in favor of Bertha Lue to be set aside for fraud), Hawkins told her he had not changed the beneficiary provisions of his life insurance because he wanted her to have funds to rear their two children in the event of his death. This, then, created an issue as to his intent.

This Court has had frequent occasion to pass on the sufficiency of the proof of substantial compliance with the change of beneficiary provisions of National Service life insurance policies. The Court early said in Mitchell v. United States, 5 Cir., 165 F.2d 758, at page 760:

"The cases are unanimous that in war-risk insurance cases involving change of beneficiary the courts will brush aside all legal technicalities in order to effectuate the manifest intent of the insured; and that if he manifests an intent to make a change and has done everything reasonably within his power to accomplish his purpose, leaving only ministerial acts to be performed by the insurer, the courts will treat that as done which ought to have been done and give effect to the insured's intent. The cases are also unanimous that a mere intent to change a beneficiary is not enough. Such an intent must be followed by some affirmative act on the part of the insured evidencing an exercise of the right to change the beneficiary. Where the courts differ is as to the degree of affirmative action necessary to effect a change. Literal compliance with the provisions of a policy is never necessary."

However, the rigor of the requirement as to proof of subsequent act was greatly relaxed in a further statement by the Court on page 761 of the opinion. There it was said:

" * * * It is said that a combination of intent and act is required, but to say in these insurance cases that though intention to change the beneficiary is proved to the hilt, no effective formal act having been done no change can be held to have been made, is not to brush technicalities very far aside * * *"

In the Mitchell case this Court held that where the intent was clearly shown to change the beneficiary from the mother to the subsequently acquired wife, the filing by the serviceman of a "Government Insurance Report Form," in which he stated that his wife was the beneficiary of his insurance, while not "an actual change * * * is strong, almost incontrovertible, *evidence* of a change."

In the next case, decided the same month, McKewen v. McKewen, 5 Cir., 165 F.2d 761, 765, this Court placed its decision affirming a judgment finding a change from a mother to a later acquired wife on the basis that the three official Army documents in which the officer stated that his wife was named as the beneficiary actually constituted the requisite notice to the Veterans Administration, although none of them was in form a request to change the beneficiary. The Court quoted from and approved the holding in the Mitchell case, but also said:

"The intention, desire, and purpose of the soldier should, if it can reasonably be done, be given effect by the Court, and substance rather than form should be the basis of the decision where, as here, the soldier's intention to name his wife as beneficiary is evidenced by official documents executed by the soldier and delivered to the insurer. His wishes

should not be thwarted by the fact that proof of the use of the prescribed forms for accomplishing his intent was not available. White v. United States, 270 U.S. 175, 46 S.Ct. 274, 70 L.Ed. 530. Cf. Claffy v. Forbes, D.C., 280 F. 233; Roberts v. United States, 4 Cir., 157 F.2d 906."

This case was almost immediately followed by the case of Gann v. Meek, 5 Cir., 165 F.2d 857, in which the Court, one judge dissenting, affirmed the judgment of the trial court which found that a change in beneficiary had been accomplished. This finding was based on a letter of the deceased to his brother in which the serviceman said: "I did change my insurance if anyone gets it Mom will get it all." The only other evidence was testimony from another serviceman who testified that in combat conditions existing at Saipan, where the insured was killed, mails were occasionally lost. The court accepted the letter as evidence *of the intent* to change and as proof that the *necessary steps had been taken,* including the written request to the Veterans Administration, although there was no other proof of his having done so.

As indicated in the dissenting opinion in the Gann case, supra, the facts there considered by the Court to be an adequate basis for a jury finding of the requisite intent and the taking of an affirmative act to implement the intent are probably the weakest which have been relied on in any such case. The subsequent case of Butler v. Butler, 5 Cir., 177 F.2d 471, 472, expressly stated that the Court was "unwilling to extend the principle of the Gann case beyond its particular facts." The Court said:

"A mere statement, oral or written, that such a change has been made is not sufficient unless followed by appropriate affirmative action."

The latest decision of this Court dealing with this difficult subject is Ferguson

v. Knight, 5 Cir., 264 F.2d 176. This Court there held that the one act relied upon by the sister of the serviceman as sufficient to effect the change of beneficiary provision from the wife was properly held by the trial court as a matter of law to be ineffective for that purpose. That document was somewhat like the form 41 quoted from above. It contained a provision for designating principal and contingent beneficiaries under Servicemen's Indemnity Act of 1951, 65 Stat. 33 (this Act provided for $10,000 benefits without payment of premiums). In this space the soldier named his sister. It was clear from the record that since the serviceman had an outstanding *insurance* policy as to which he had been excused from the payment of further premiums under the authority of the Servicemen's Indemnity Act, this provision was meaningless and nugatory as to him. His sister, named as the beneficiary of such benefits, was entitled to nothing. The form contained the same provisions as that in this case to the effect that this form did not designate or change beneficiaries of insurance. The court held that the signing of this form did not meet the required standard of intent plus act.

We think it is plain that a careful reading of the cases from this circuit, as well as from the others [2] makes it clear that the sufficiency of the overt acts required is partially judged by the clarity and positiveness of the proof of intent. As was said by us in the first case cited, Mitchell v. United States, supra, 165 F.2d at page 761:

"* * * It is said that a combination of intent and act is required, but to say in these insurance cases that though intention to change the beneficiary is proved to the hilt, no effective formal act having been done no change can be held to have been made, is not to brush technicalities very far aside * * *."

2. For an interesting article touching on this subject see the annotation to the

Mitchell case, supra, in 2 A.L.R. at page 489.

It is obvious that either clear and convincing proof of continuing intent or a clearly defined and unequivocal act seeking to make the change is necessary to prevent the frauds "obviously latent in the situation if basic minima of proof be disregarded." Cohn v. Cohn, 84 U.S. App.D.C. 218, 171 F.2d 828, 829. If the proof of intent is clear and convincing it is understandable that the courts find it easier to discover sufficient evidence that the serviceman did all that was reasonably necessary to make the change.

The record before us makes an exceptionally strong case to support the contention that the serviceman intended to withdraw benefits from his former wife and confer them on his widow. These same facts if and when they are fully proved on a trial where the parties are permitted to testify and subject themselves to cross examination may also constitute such circumstances as would authorize a finding that no additional step need be taken by the soldier to change the beneficiary. This might be so if the jury should find on adequate evidence that in the circumstances here present Hawkins reasonably thought that the divorce in which the appellee was found to be the guilty party, coupled with the court-ordered responsibility of Hawkins for the continued care and custody of the children followed by marriage to the appellant and his ambiguous act in executing the form 41, in which his wife was named as the recipient of some benefits, worked a change of beneficiary.

We do not say what proof would be adequate to support such a finding. Here there is an admitted breach of family relationship such as is sometime effective to change the beneficiary provisions of life insurance coupled with proof that Hawkins thereafter said such change had been made.

■ Of course, a divorce standing alone would not work a change of beneficiary of National Service life insurance. Since, however, in some jurisdictions it is held that a divorce does effect a change of beneficiary, see O'Brien v. Elder, 5 Cir., 250 F.2d 275; Hatch v. Hatch, 35 Tex.Civ.App. 373, 80 S.W. 411, and New England Mutual Life Ins. Co. v. Spence, 2 Cir., 104 F.2d 665, 125 A.L.R. 1281, we say only that the jury can evaluate the fact of a divorce coupled with the peculiar circumstances surrounding it in order to determine whether the serviceman has done all that he thinks is reasonably necessary to accomplish a change.

■ Whether such expression is sufficient to justify an inference that the soldier believed he had done everything he thought was necessary; whether such belief by him, if found to exist, was reasonably held, and then whether, if so, this divorce and custody action would constitute such affirmative act as is held to be necessary are all questions that can be much better resolved upon a record fully developed on a full trial. Some of them are questions of fact which should first be passed on by a jury. Thereafter the trial court will be much better able to test the legal sufficiency of such findings than on the record thus far developed.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.