**Bobby Charles DUTTON, Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant**

v.

**Mrs. Jane Dutton PARKER, Third-Party**
**Defendant.**

Civ. A. No. 1512.

United States District Court
N. D. Georgia,
Rome Division.

Jan. 4, 1965.

---

Cecil D. Franklin, Rockmart, Ga., for plaintiff.

Charles L. Goodson, U. S. Atty., Slaton Clemmons, Asst. U. S. Atty., for the United States.

James I. Parker, Cedartown, Ga., for third-party defendant.

MORGAN, District Judge.

This is another case of conflicting claims by persons seeking to establish their rights as beneficiaries under a policy of National Service Life Insurance. On November 23, 1964, the above action came on for a trial before this Court without a jury, and, after hearing the evidence, receiving the briefs and written arguments of counsel, the case is now properly before the Court for determination.

The plaintiff, being a resident of the Northern District of Georgia, Rome Division, and the defendant being the United States of America, this Court has jurisdiction of this action.

The problem presented here is whether Sgt. Marshall Dutton, now deceased, effectively changed the beneficiary of his National Service Life Insurance policy from his half-brother, Bobby Charles Dutton, the plaintiff, to his widow, Mrs. Jane Dutton Parker, third party intervenor.[1] Sgt. Dutton, according to the evidence entered the Marine Corps in 1948, and died in an air crash while in

---

1. The United States is in the position of a stakeholder in this case having admitted liability on the policy in question.

service May 15, 1958. He was unmarried at the time he entered service and made his father, also named Marshall, beneficiary of his National Service Life Insurance. He named his half-brother, at that time, eleven years of age, as contingent beneficiary. Bobby Charles Dutton, the plaintiff herein, was the only child of Sgt. Dutton's father by his second wife. Sgt. Dutton's own mother had died when he was very young, she being the mother of a large family of whole brothers and sisters. Sgt. Dutton's father died several years after he entered the service.

During Sgt. Dutton's tour of duty in Hawaii in the early 1950's, he married the intervenor, by whom he had three children.

The evidence shows that Sgt. Dutton, soon after his marriage spent a short time in Santa Ana, California with his wife and children and was thereafter transferred to Japan where he spent twelve to fourteen months. His wife returned to her home in Hawaii with the three children while Sgt. Dutton served in Japan.

After the tour of duty in Japan, Sgt. Dutton was transferred to Camp Lejeune, North Carolina in the fall of 1957. As Sgt. Dutton was being transferred to Camp Lejeune, he drove cross-country and visited several whole brothers and sisters in Cedartown, Georgia during the delay en route.

A brother, Daniel Dutton, testified that on two different occasions Sgt. Dutton told in his presence that he, Sgt. Dutton had his insurance made to his wife so that his children would be "well taken care of." One of these conversations took place while in the automobile in which he and Sgt. Dutton and a brother-in-law, J. C. Reeves, rode to Camp Lejeune and back. This trip took place during the Christmas Holidays of 1957 while Sgt. Dutton and his family were visiting in Cedartown with his whole brothers and sisters. It was necessary for him to return to Camp Lejeune for a short period during Christmas 1957 to "pull duty." Daniel and the brother-in-law drove him to Camp Lejeune and back from Cedartown, Georgia.

The other occasion related by Daniel Dutton was in the home of Daniel around the kitchen table after their families had finished eating on Christmas Eve. This conversation was corroborated and recalled by Daniel's wife, Clara. Sgt. Dutton told them that for a while he had "free" insurance, but that he had to recently resume payments.

Another brother-in-law, Horace Atkins testified that on still two other occasions the deceased Sgt. Dutton, made statements to him and others concerning the insurance. These conversations were similar in content to those made by Sgt. Dutton to Daniel Dutton and Daniel's wife, Clara. The latter conversation was prompted by a reference to the extreme danger of flying helicopters made by Mrs. Rachel Atkins, a sister of Sgt. Dutton, who was unable to testify at the trial because she was confined to Beatty State Hospital with tuberculosis.

The third party defendant, Sgt. Dutton's widow, who has remarried and now is named Parker, testified that on several occasions she thinks her husband discussed his insurance, but she only recalled two specific instances. On one occasion he discussed whether to have it payable in a lump sum and concluded that he should do so. The widow also testified that Sgt. Dutton wrote a letter from Japan stating to her that he was going to have to resume paying for his insurance, that he had decided to keep it. Both times Sgt. Dutton stated that the insurance was payable to her.

Documentary evidence was introduced on behalf of the third party defendant in the form of Forms DD–93 which are called "Record of Emergency Data." There were five of these forms which appeared to be all of such forms signed by Sgt. Dutton on each occasion that he made a change of duty during the time that he was married to the intervenor. In the first three of these forms executed by Sgt. Dutton it is noted that he made

his wife beneficiary of all things over which he had a choice in the nature of benefits as the result of his being in the Marine Corps. All five of these forms named the third party defendant, Jane Sadame Dutton, as the wife and beneficiary for unpaid pay and allowances, allotment of pay if missing or unable to transmit funds.

The first two forms DD–93 required a designation as follows:

21. DESIGNATION OR CHANGE OF BENEFICIARY–SERVICEMEN'S INDEMNITY (PL 23, 82d Cong.)

(Does not operate as a designation or change of beneficiary of insurance contracts issued by United States Government).

ALL PREVIOUS DESIGNATIONS OF PRINCIPAL AND CONTINGENT BENEFICIARIES IF ANY UNDER SERVICEMEN'S INDEMNITY ACT OF 1951 ARE HEREBY CANCELLED, AND IT IS DIRECTED THAT SAID INDEMNITY BE PAID TO:

| Name: | Relationship: | Share or amount to each beneficiary: |
|---|---|---|
| Jane Sadame Dutton | Wife | 100% |

———◆———

The third form, called DD–93–1, which was executed 26 November, 1956 was in a slightly different form and provided for both principal and contingent beneficiaries of Servicemen's Indemnity. In the appropriate designation on that form Sgt. Dutton listed as principal beneficiary, Jane Sadame Dutton, and as contingent beneficiary for $5,000.00 each, his sons, Ronald James Dutton and Jimmy Marshall Dutton. In the fourth form dated February 26, 1957 in the space provided for designation of beneficiary for Servicemen's Indemnity the designation was "Not applicable—NSLI." On the final form dated October 29, 1957 there was no reference whatever to Servicemen's Indemnity.

On all five of these forms the wife was named as first or principal beneficiary for all benefits. In spaces calling for designations of contingent beneficiaries, he named as contingent beneficiaries of Servicemen's Indemnity on 26 November, 1956 his two sons, Ronald James Dutton and Jimmy Marshall Dutton. In two of the forms he was called upon to name a relative other than spouse or eligible child surviving as beneficiaries for the six months gratuity pay and he named his brother, Rayford, first on both and

Daniel Dutton on one and Rachel Atkins on the other as alternate. It is significant to note that on none of these five forms is the plaintiff, Bobby Charles Dutton, ever named or mentioned to be beneficiary of anything.

In view of the evidence and some additional circumstances, the Veterans Administration awarded the proceeds of the policy to the third party defendant herein. The plaintiff, Bobby Charles Dutton, filed this suit and rested his entire case on the simple fact that his name was listed originally as contingent beneficiary.

The United States in this case admits the policy to be in force in the amount of $10,000.00 and appears primarily as a stakeholder.

█ Under the provisions of the governing statute (38 U.S.C. § 717) the holder of a NVA regulation 3447 (38 CFR 847 1956 Rev.) the holder of a National Service Life Insurance contract has an absolute right to designate the beneficiary of his choice and to change the beneficiary at any time without that person's consent. See McKewen v. McKewen, 5 Cir., 165 F.2d 761. A serviceman may effectively change the designation of the beneficiary of his NSLI with-

out strictly adhering to the procedures set out in government regulations. 5 Cir., Mitchell v. United States, 165 F.2d 758.

■ It has been recognized by the Court that each of these insurance cases must be decided in light of its own facts. See Mitchell v. United States, supra. The widely accepted rule is that two conditions are necessary in order to change the designation of beneficiary of National Service Life Insurance without having completed prescribed forms. First, the serviceman must have intended to change his beneficiary. Second, he must have done an overt act directed toward accomplishing his intention to change the beneficiary. This rule has been followed by the Fifth Circuit. See Hawkins v. Hawkins, 271 F.2d 870 (5th Cir. 1959); Stone v. United States, 272 F.2d 746 (5th Cir. 1959).

■ There is nothing in the case of Ferguson v. Knight, 264 F.2d 176 (5th Cir.1959) cited by the plaintiff which is inconsistent with these later cases of this Circuit. In the Ferguson case it was held that the mere execution of Form DD–93 in itself was not sufficient. However, the later cases of Hawkins v. Hawkins, supra, and Stone v. United States, supra, make it clear that the Ferguson case did not rule out Form DD–93 as the overt act which with other evidence would be sufficient.

In Behrins v. United States, 299 F.2d 662, the 9th Circuit Court of Appeals distinguished the Ferguson case and allowed Form DD–93 to be the overt act. In the instant case there is not one form but five forms made on five separate occasions meeting the standard of the case of Hawkins v. Hawkins, supra. In all the forms executed by Sgt. Dutton there is persuasive evidence of intention to leave everything to his wife and not to his half-brother who was no longer a minor but who had now become self-sufficient. This, together with all the other circumstances makes an overwhelming case for the widow.

■ The objection to the testimony of the third party defendant concerning statements to her about the insurance from Sgt. Dutton is overruled. The testimony is not inadmissible.

■ Applying the law as above stated, to the facts in the instant case, this Court is of the opinion that the deceased veteran, Sgt. Marshall L. Dutton manifested a clear intent to change the beneficiary and expressed a positive belief that he had done so. The first Form DD–93 executed June 30, 1955 in which he designated his wife, Jane Sadame Dutton, as principal beneficiary of Servicemen's Indemnity in the amount of $10,000.00 was a sufficient overt act to accomplish this purpose. Additionally, however, there are four other Forms along with the statements of the serviceman to members of his family which certainly give additional proof of Sgt. Dutton's intention to change his beneficiary to his wife.

Therefore, the third party defendant, Mrs. Jane Dutton Parker is entitled to the proceeds of National Service Life Insurance Policy No. V–17600611, which insurance policy was in effect at the time of the insured's death on May 15, 1958.

■ The prevailing party is not entitled to recover interest and costs against the United States. See United States v. Worley, Administratrix, 281 U.S. 339, 50 S.Ct. 291, 74 L.Ed. 887.

Let this opinion constitute the Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

Let judgment be entered accordingly.