## R. C. SHORES *v.* Bessie M. Shores NELSON

5-5109                                    450 S. W. 2d 543

Opinion delivered March 2, 1970

*Donald Poe,* for appellant.

*Mobley, Bullock & Harris,* for appellee.

Lyle Brown, Justice. This controversy is between the divorced parents of a deceased soldier and over the proceeds of a life insurance policy taken out by their son. The policy was issued by The Prudential Insurance Company of America to the soldier son under the Servicemen's Group Life Insurance Act, 38 U. S. C. A. § 765. Bessie M. Shores Nelson petitioned that she be declared the designated beneficiary and that Prudential be enjoined from paying any of the proceeds to R. C. Shores, the father. She also made R. C. Shores a defend-

ant. Prudential paid the face amount of the insurance certificate into the registry of the court and asked for discharge of further liability, which was granted. The trial court found that the son had made a written designation of his mother as beneficiary and that the instrument had been received in the uniformed services prior to the son's death. The appellant, as a basis for reversal, challenges both those findings.

Congress passed in 1965 an amendment to Title 38 to afford special indemnity insurance for members of the armed forces serving in combat zones. The law is designated "Sub-chapter III—Servicemen's Group Life Insurance." The Act provides that each such serviceman is automatically insured beginning with his active duty unless he elects in writing not to be insured. On June 10, 1966, during his processing period under a voluntary enlistment, Malton G. Shores, the son, made his insurance election. He executed in triplicate DA Form 3054, specifying that he desired to remain insured and designating his mother as sole beneficiary. Under army regulations the original of Form 3054 was to be placed in the service member's field personnel file, the duplicate copy given to the member, and the triplicate forwarded to the custodian of the member's financial data records folder.

At the trial of the case appellee produced her son's copy of Form 3054. She also introduced a letter purportedly written by her son and mailed to her along with the government form. She said she received those instruments in June 1966. The letter, among other things, stated, "I am sending a paper to you. This paper is showing that I have life insurance for $10,000."

Pvt. Shores was killed in action in Vietnam in July 1967. Subsequently there was of course a processing of his army files; during that endeavour it was discovered that the original of Form 3054 was not contained in his permanent file, which we have previously referred to as his field personnel file.

There is yet another signed copy of Form 3054, being the triplicate which regulations provided should be placed in the soldier's financial data records folder. There was introduced in evidence a certified document from the Army Finance Center. That instrument contains a reproduction of Pvt. Shores's Form 3054 which compares favorably with the copy possessed by appellee. Its authenticity is not questioned. Unfortunately the document from the finance center does not show the date on which Form 3054 was received by it.

This brings us to the crux of the case. Does the fact that a copy of Form 3054 was never placed in the Shores field personnel file—or placed there and thereafter lost—affect his designation of beneficiary? We think not. The question is whether he complied with the simple statutory requirements (1) that his designation be in writing, and (2) that it be received in the uniformed service prior to his death. We think the chancellor's findings that the veteran performed those requirements are amply supported by the evidence. At the army processing center it cannot be doubted that the young man signed all documents requested of him to be signed. His copy of Form 3054 (which he sent to his mother) is apparently a receipted copy because it bears the signature "Lt. Richmond" in the upper right-hand corner. When young Shores turned over to the processing officer of the army a signed copy of Form 3054, his designation of beneficiary was as of that moment received in the uniformed service. It then became the duty of the army, not the inductee, to distribute the retained copies in accordance with army regulations.

Appellant's first point for reversal is that there was no written designation of beneficiary "properly filed with the adjutant general's office [to be placed in the personnel file] prior to Malton Gene Shores' death." What we have just said answers that point. It should be remembered that this case deals with the *original* designation of a beneficiary as opposed to a *change* in beneficiary. Appellant relies strongly on *Stribling* v. *United States et al,* 293 F. Supp. 1293 (1968), but that case in-

volved a *change* in beneficiary. Appellant also cites as controlling *Breckline* v. *Metropolitan Life Insurance Co.*, 178 A. 2d 748 (1962). In *Breckline* the involved *statute* required a filing of written designation of beneficiary in the employing office and that requirement was never complied with during the life of the insured.

Appellant next argues that appellee failed to establish that designation of beneficiary was in fact ever executed. It was clearly established that the signature on the copy of Form 3054 possessed by the mother was genuine and that the covering letter written by the boy was likewise genuine. Furthermore, the Army Finance Center was in possession of a copy.

Appellant's final point for reversal is based on the argument that a copy of Form 3054 found its way into the file of the finance center under date of December 11, 1967, long after the veteran's death. The reasoning is that appellee became disturbed when she did not forthwith receive the proceeds of the insurance; that she exhibited her copy to veterans service agencies, which in turn presented it to the finance center; and that the letter stamped it with a filing mark, made a photocopy of it, and returned Mrs. Shores her copy. Nothing in the record actually supports the argument. The filing mark on appellee's copy does not appear on the copy in the record of the finance center. There is another significant difference between the two copies. Lt. Richmond's signature on appellee's copy, to which we have referred, does not appear on the finance center's copy. It is also revealed, from a careful examination of the exhibits, that the filing stamp on the mother's copy is not the stamp of any government agency; rather it is that of a private central agency formed by all insurance companies participating in the writing and servicing of insurance policies for members of the armed forces.

The wishes of this veteran, who gave his life in combat, are of utmost importance to us. Since we think it clear, as it appeared to the chancellor, that he was in substantial compliance with the statutory requirements,

we have no hesitancy in affirming.

Affirmed.