Jessie E. COOMER, Plaintiff-Appellant,

v.

UNITED STATES of America et al.,
Defendants-Appellees.

SERVICEMEN'S GROUP LIFE INSUR-
ANCE and Prudential Life Insurance
Company, Defendants-Third-Party Plain-
tiffs-Appellants,

v.

Patricia Gay COOMER, Third-Party
Defendant-Appellee.

No. 72-1759.

United States Court of Appeals,
Fifth Circuit.

Jan. 2, 1973.

**2**

Thomas Dale, T. D. Wells, Paris, Tex., for Coomer.

John A. Gilliam, Bennett W. Cervin, Frank Finn, Dallas, Tex., for Servicemen's and Prudential.

Roby Hadden, U. S. Atty., C. Houston Abel, Asst. U. S. Atty., Tyler, Tex., for the United States.

Before MORGAN, CLARK and IN-GRAHAM, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

On this appeal we must decide whether a deceased serviceman validly designated his father as beneficiary of his Servicemen's Group Life Insurance policy within the terms of 38 U.S.C. § 769(a). The district court held that because there was no written beneficiary designation existing in the deceased's personnel file at the time of his death no designation occurred and therefore the proceeds of the policy should be paid to the deceased's widow by virtue of the statutory priorities set forth in 38 U.S. C. § 770(a). We reverse the holding and enter judgment in favor of the deceased's father.

Richard E. Coomer was a petty officer in the United States Navy assigned to the Fourth Marine Construction Battalion. While stationed in Vietnam Coomer decided to purchase a $10,000.00 life insurance policy through Servicemen's Group Life Insurance (SGLI), a program established by Congress in 1965 for the purpose of providing members of the armed forces with the advantages of low-cost group life insurance. 38 U.S.C. § 765, et seq.; 1965 U.S.Code Cong. and Adm.News, p. 3232. Under this program the administrative work in issuing the policies is performed by the individual's particular branch of the service acting in conjunction with the Veterans Administration, while the actual risk is undertaken by private insurance companies, which in this case was Prudential. The statute provides that in the event of death the insurance proceeds will be paid to the beneficiary designated by the insured "by a writing received in the uniformed services." 38 U.S.C. § 770(a). If no beneficiary is designated this same section provides for payment to the serviceman's widow.

When Coomer's battalion arrived in Vietnam Roy L. Elliot, the personnel man who was in charge of maintaining the service records of the members of the battalion, discovered that he could not obtain the standard beneficiary designation forms commonly used for SGLI. To remedy the situation Elliot prepared his own designation forms which were subsequently approved by his superior officer. On January 10, 1967, Petty Officer Coomer filled out one of these forms and designated his father, Jessie E. Coomer, as the primary beneficiary. The form was signed by both Richard Coomer and Roy Elliot.

In August of 1967, Coomer finished his tour of duty in Vietnam and returned to the United States carrying his sealed personnel file and official service records with him.[1] On leave of absence Coomer proceeded to his home in Paris, Texas, where he met Patricia Gay Puryear who was then employed at an Oklahoma bar called Todd's Place. Coomer married Patricia Gay Puryear on September 14, 1967, and the couple settled at Coomer's new duty station in Fallon,

---

1. When a serviceman is transferred from one duty station to another it is common practice in the Navy to have that serviceman carry his entire service records with him.

Nevada. Six weeks later the couple permanently separated and Patricia moved back to her parents' home in Grant, Oklahoma. On February 23, 1968, Coomer was killed in an explosion.

When Navy personnel examined Coomer's service file, however, they found that it did not contain a designation or beneficiary form. Prudential was notified of this fact and informed by the Navy that the insurance proceeds should be paid to the widow according to the terms of the statute. On March 19, 1968, Prudential paid $10,000.00 to Patricia Gay Puryear Coomer. Approximately two weeks later Coomer's parents received the personal effects of their son and inside his footlocker they discovered the form which designated the deceased's father as beneficiary of the SGLI policy. The parents contacted an attorney who filed suit in federal district court[2] against the United States, Servicemen's Group Life Insurance and Prudential Life Insurance Company. The widow, Patricia Gay Puryear Coomer, was named as third party defendant in the event judgment went against Prudential.

■ The case was tried without a jury[3] and the district court held that the widow was entitled to the insurance proceeds. The court construed the requirement of 38 U.S.C. § 770(a) that the beneficiary designation be in "writing" and "received by the uniformed service" to mean that "any written designation of beneficiary must exist in the official service records of the serviceman's branch of service at the time of his death." We hold that this conclusion is an unwarranted interpretation of the

statute. There is no dispute here concerning the presence of a writing; the only question is the meaning of the phrase "received in the uniformed services." In the definition section of this statute Congress stated that " 'uniformed services' means the Army, Navy, Air Force, Marine Corps, Coast Guard . . . ." 38 U.S.C. § 765(6). There is nothing in either the legislative history or subsequent court decision[4] which would even remotely indicate that Congress, having defined "uniformed services", intended to further restrict the definition and equate receipt by the particular service branch with actual presence of the beneficiary designation form in the serviceman's records. Such an interpretation runs contrary to the specific language of the statute which provides that the insured may choose his own beneficiary providing he completes the requisite formalities. Certainly Congress could not have intended to let that choice become nullified when, through no fault of the serviceman, his records are lost, destroyed, stolen or misplaced. Shores v. Nelson (1970), 248 Ark. 155, 450 S.W.2d 543.

■ Prudential argues further that it ought to be allowed to rely upon what is contained in the serviceman's file at death because if the statute is construed otherwise serious administrative difficulties would result and insurance companies would be constantly exposed to the payment of double or multiple claims. Besides the obvious answer that such a construction is inconsistent with the plain meaning of the statute as passed by Congress, the facts here involved do not support this contention. All the Navy had to do was check the deceased's

---

2. Although the amount in controversy did not exceed $10,000.00 jurisdiction was had by virtue of the United States being a party to the lawsuit. Shannon v. United States, 5 Cir., 1969, 417 F.2d 256.

3. Appellant alleges, without support in the record, that he was denied a jury trial because the district judge threatened not to bring the case to trial if a jury was

demanded. All parties agree that a form waiving a jury trial was signed, but for some reason the form is not contained in the record. Nevertheless, due to our disposition of this case, we do not consider the jury trial issue.

4. These decisions will be discussed in the body of this opinion, *infra*.

personal belongings and then inform Prudential of the presence of the beneficiary designation form. Had this been done Prudential could have simply delayed payment [5] until it was properly determined who should receive the insurance proceeds and there would have been no double exposure. Having elected to sell insurance and use Navy personnel to perform services that would normally be carried out by its own employees, Prudential cannot now claim that it should be exempt from responsibility for a possible lack of thoroughness in searching for the beneficiary designation form.

There have been numerous state and federal court decisions concerning beneficiary designations under SGLI, but these cases [6] dealt not with what constituted receipt by the uniformed service but with the question of whether or not receipt of a writing was necessary at all to effect a valid beneficiary designation or change. For example, in Stribling v. United States, 8 Cir., 1969, 419 F.2d 1350, the plaintiff possessed a writing from the deceased which clearly named her as beneficiary of the insurance policy. The plaintiff argued that since the deceased indisputably intended her as the beneficiary there was no need to force literal compliance with the statute by requiring the writing to have been received by the Army prior to the insured's death. In rejecting this argument the Eighth Circuit held that Congress intended that designation could occur only when the writing was received by the uniformed service. A strict construction of SGLI was mandated, the Court reasoned, by the history of the analogous Federal Employees Group Life Insurance Act of 1954, 5 U.S.C. § 8701 et seq. As originally enacted the Federal Employees Group Life Insurance Act stated that the insurance proceeds would be paid "First, to the beneficiary . . . . designated by the employee in a writing received in the employing office before death." However, in Sears v. Austin, 9 Cir., 1961, 292 F.2d 690, the Ninth Circuit construed the Act liberally and held that even though no writing was ever received by the employing office, a valid beneficiary designation could take place as long as the intent of the insured was clearly manifested.[7] In response Congress, in 1967, amended the Act to emphatically require that a writing must be received in the employing office. 5 U.S.C. § 8705(a). The accompanying Senate Report [8] specifically stated that the purpose of the amendment was to negate the *Sears* decision which, if followed, could lead to administrative difficulties and impede the speedy payment of insurance claims. By its action in amending the Federal Employees Group Life Insurance Act, Congress made clear the standard that must be applied here. While, as mentioned previously, there is

---

5. Prudential could also have paid the proceeds into the court registry if a lawsuit was initiated.

6. Hill v. Hill, (1972), 23 Cal.App.3d 760, 100 Cal.Rptr. 458; Davenport v. Servicemen's Group Life Insurance, 1969, 119 Ga.App. 685, 168 S.E.2d 621; Breckline v. Metropolitan Life Insurance Co., 1962, 406 Pa. 573, 178 A.2d 748; Farley v. Prudential Insurance Company, Supreme Ct. of Tex., 1972, 480 S.W.2d 176; Prudential Life Insurance Company of America v. King, 8 Cir., 1971, 453 F.2d 925; Stribling v. United States, 8 Cir., 1969, 419 F.2d 1350, affirming Stribling v. United States, (E.D.Arkansas, 1968), 293

F.Supp. 1293; Prudential Insurance Company of America v. Warner, (W.D. Virginia, 1971), 328 F.Supp. 1128; Weymann v. Wilson, (M.D.Florida, 1970), 320 F.Supp. 980.

7. See this circuit's construction of the National Service Life Insurance Act of 1940, 38 U.S.C. § 701, et seq. Smith v. United States, 5 Cir., 1970, 421 F.2d 634; Hawkins v. Hawkins, 5 Cir., 1959, 271 F.2d 870; Mitchell v. United States, 5 Cir., 1948, 165 F.2d 758; McKewen v. McKewen, 5 Cir., 1948, 165 F.2d 761.

8. S.Rep.No.1064 to H.R. 432, appearing in 2 U.S.Code Cong. & Admin.News, 89th Cong., 2nd Sess. p. 2070 (1966).

no requirement that Coomer's beneficiary designation form exist in his service file at the time of death, the form must have been "received" by the Navy at some point before death if the designation of his father is to be given effect. See Hill v. Hill, (1972) 23 Cal. App.3d 760, 100 Cal.Rptr. 458.

Turning to the question of what constitutes receipt by the Navy we need not, under the circumstances of this case, define the precise outer limits of the term by going into the question of exactly by whom and in what place the writing must be received before a beneficiary is legally designated. Whatever receipt means, it certainly occurs when the serviceman hands the writing naming the beneficiary to the person whom the Navy has put in charge of receiving and maintaining the beneficiary designation forms. In this case that person was Roy Elliot. The district court, apparently operating under the erroneous assumption that the writing had to be contained in the service file at the time of death, never reached the question of whether or not Coomer ever physically gave Elliot the beneficiary designation form. The court did find that the form "was never received in the *official U. S. Navy Service Records* of Richard E. Coomer." (emphasis supplied). This finding is of little consequence, however, because as we have already stated in this opinion, supra, what happens to the form after it is received by the official record keeper cannot vitiate the validly expressed intent of the insured.

At this point we could remand this case to the district court for a factual determination on whether Coomer handed the beneficiary designation form to Elliot, but we believe such a course is unnecessary in view of the state of the record before us. Elliot testified by deposition. He stated unequivocally that he designed the beneficiary designation form himself; that he received the completed form from Coomer; and that both he and Coomer signed the form.

The form itself, signed by both parties, is a part of the record on appeal. No evidence was presented which contradicted or cast doubt upon Elliot's depositional testimony that he took possession of the form designating Coomer's father. We hold, therefore, that Coomer gave the form to Elliot and regardless of what may have happened to the form after Elliot gained possession, the form was received by him, and hence by the Navy, for the purposes of 38 U.S.C. § 770(a).

Having established that the beneficiary designation form was received by the Navy, the remaining question is whether Coomer effected a valid change of beneficiary prior to his death. The district court, in what can only be described as an alternative finding of fact, held that even if a beneficiary designation form was received in Coomer's file (the court had previously found that none was received) "such form was removed from the official U. S. Navy Service Records by Richard E. Coomer or someone acting at his request, prior to his death on February 23, 1968, and such removal constituted a change of beneficiary to Patricia Gay Coomer." Prudential and the United States argue vigorously in their respective briefs that the evidence showed that the form could not have been removed except with Coomer's consent and therefore the designation of the father was revoked when the form was taken out of the service file. Assuming *arguendo* that the form was removed at Coomer's request, this contention conflicts with the administrative regulations which provide in pertinent part that "any change of beneficiary . . . . will take effect only if it is received in writing, signed by the insured, and received, prior to the death of the [insured], by his uniformed service." 38 C.F.R. § 9.16(c). The regulation does nothing more than give a logical interpretation to the statute by requiring that once a beneficiary is designated by complying with the statutory

formalities that designation can be changed only by a document and procedure of like dignity. Since Congress clearly intended to require strict compliance with the statute in designating the beneficiary there is no doubt that it also intended to impose similar requirements when the beneficiary is changed. Any other result would create time consuming disputes over the actual intent of the serviceman, and that is the very evil Congress sought to avoid by requiring written designations received by the service branch. See Stribling v. United States, supra. There was no legally effective change of beneficiary in this case.

We hold, therefore, that Petty Officer Richard E. Coomer validly designated his father as beneficiary of the SGLI policy by a writing which was received by the Navy in compliance with the provisions of 38 U.S.C. § 770(a). When Coomer presented the beneficiary designation form to the proper office he did all he could do, and all he was required to do under the statute, to ensure that his father would receive the insurance proceeds in the event of his death. The responsibility for whatever happened to the form after it was turned over to the Navy must rest with Prudential and the government. Since the beneficiary designation was never changed, Jessie E. Coomer, as the beneficiary of the insurance policy is entitled to judgment against the defendants in the amount of $10,000.00. Accordingly, Prudential is entitled to judgment in this amount against the third party defendant, Patricia Gay Puryear Coomer.

The judgment of the district court is hereby reversed and the case remanded with directions that the district court enter judgment in accordance with the views expressed herein.

Reversed and remanded with directions.