The **PRUDENTIAL INSURANCE COMPANY OF AMERICA**, Plaintiff,

v.

**Anne Marie SMITH, Defendant-Appellant,**

v.

**Irene M. SMITH, Defendant-Appellee.**

No. 84–4497
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 10, 1985.

---

Bernard W.N. Chill, Sr., Luke Dove, Jackson, Miss., for defendant-appellant.

Robert P. Thompson, Jackson, Miss., for defendant-appellee.

Before RUBIN, RANDALL, and TATE, Circuit Judges.

TATE, Circuit Judge:

This interpleader action involves the competing claims of two former wives of a deceased serviceman, Sergeant Terry Joe Smith, to be the beneficiary, as his "widow," of a Servicemen's Group Life Insurance ("SGLI") policy issued to the deceased serviceman.[1] *See* 38 U.S.C. §§ 765 *et seq.*[2] The competing claimants are: Anne Marie Smith ("Anne Marie"), the first wife of the deceased serviceman; and Irene M. Smith ("Irene"), to whom the serviceman was subsequently married, after securing a divorce from Anne Marie, and with whom the serviceman was living at the time of his death. Anne Marie, the first wife, contends that the divorce was invalid, for procedural defects, and that therefore she was the "lawful spouse," and consequently the widow, of Sergeant Smith when he died, despite his later ceremonial marriage to Irene.

Anne Marie appeals from judgment recognizing Irene, the second wife, as the intended beneficiary. Anne Marie contends (1) that the divorce was invalid and therefore, under the SGLI statute, she was the "lawful spouse" and beneficiary of the policy; and (2) that, in affording weight to the actual intent of the insured serviceman rather than literally applying the statutory definitions, the district court followed principles applicable to servicemen's policies issued under the National Service Life Insurance Act ("NSLI"), 38 U.S.C. §§ 701 *et seq.* (a servicemen's life insurance program applicable to an earlier period of military service), rather than the more stringent standards applicable to a SGLI policy, such as the present, as provided by *Stribling v. United States*, 419 F.2d 1350 (8th Cir.1969), and succeeding jurisprudence.

We affirm. Like the district court, we conclude that it is unnecessary to determine the validity of Sergeant Smith's divorce from Anne Marie. We hold that the district court properly determined, under principles applicable to SGLI policies, that the beneficiary of Sergeant Smith's policy

---

1. The insurer, Prudential Insurance Company, commenced this action interpleading the two claimants, so that the court could determine the rival claims. The insurer deposited the proceeds of the policy, $20,000 plus interest, into the registry of the court and then bowed out of the litigation. It is not a party to this appeal.

2. The statutory scheme establishes a type of war risk life insurance in which the United States contributes to the private insurer that part of the life insurance premium attributable to the increased risk of mortality of persons in combat. The essential details of this type of insurance are summarized in *Ridgway v. Ridgway*, 454 U.S. 46, 50–53, 102 S.Ct. 49, 52–54, 70 L.Ed.2d 39 (1981).

was Irene, based on official forms filed prior to his death that clearly showed his intent to designate Irene in particular—not merely his "widow"—as his beneficiary.

## I.

The pertinent facts are undisputed. Smith entered the United States Army and married Anne Marie in Mississippi in 1974. In early 1977, Sergeant Smith transferred to Germany and never saw Anne Marie again. In 1978, he filed an action in Mississippi for divorce from Anne Marie, and the divorce decree was entered in September 1978. Sergeant Smith then married Irene in New Jersey in December 1978, and thereafter they lived together as man and wife until Smith's death in November 1980.

Prior to his divorce from Anne Marie, Sergeant Smith had executed appropriate forms for filing in his military records showing her to be his wife and providing that his lawful wife was his beneficiary under his SGLI policy. After his divorce and second marriage to Irene, as will be shown more fully below, Sergeant Smith executed and filed three forms with his military records that unmistakably showed that he regarded Irene as his lawful wife and that he intended for her to be the beneficiary of his SGLI policy.

Before setting forth these circumstances, we outline the statutory provisions with regard to the beneficiaries of SGLI policies. By 38 U.S.C. § 770(a),[3] the statutory scheme provides that precedence shall be given, first, to the beneficiary "designated [by the serviceman] by a writing received prior to death" with the military services. If no such beneficiary has been so designated, the statute provides for an order of precedence; first, to the "widow or widower;" then, if there be none, to a child or children or to (if predeceased) their descendants; then, if none of the previous apply, to the parents; and, finally, if none of the above apply, to the administrator or next of kin. The administrative regulations provide that a serviceman may designate *"any"* person or entity as beneficiary, 38 C.F.R. § 9.16(a), and that "[a]ny designation or change of beneficiary] ... will take effect only if it is in writing, signed by the insured and received prior to the death of the insured by his or her uniformed service," *id.*, § 9.16(d).[4]

A form is provided whereby a serviceman may elect *not* to take the statutory $20,000 coverage of a SGLI policy and whereby he may designate his beneficiary. The form, entitled "Servicemen's Group Life Insurance Coverage," is numbered as VA Form 29–8266. The record reflects that Sergeant Smith had executed such a form during his first marriage to Anne Marie, accepting the statutory coverage

---

**3.** 38 U.S.C. § 770(a) provides (in full):

(a) Any amount of insurance under this subchapter in force on any member or former member on the date of his death shall be paid, upon the establishment of a valid claim therefor, to the person or persons surviving at the date of his death, in the following order of precedence:

First, to the beneficiary or beneficiaries as the member or former member may have designated by a writing received prior to death (1) in the uniformed services if insured under Servicemen's Group Life Insurance, or (2) in the administrative office established under section 766(b) of this title if separated or released from service, or if assigned to the Retired Reserve, and insured under Servicemen's Group Life Insurance, or if insured under Veterans' Group Life Insurance;

Second, if there be no such beneficiary, to the widow or widower of such member or former member;

Third, if none of the above, to the child or children of such member or former member and descendants of deceased children by representation;

Fourth, if none of the above, to the parents of such member or former member or the survivor of them;

Fifth, if none of the above, to the duly appointed executor or administrator of the estate of such member or former member;

Sixth, if none of the above, to other next of kin of such member or former member entitled under the laws of domicile of such member or former member at the time of his death.

**4.** The regulations further provide that "[a] change of beneficiary may be made at any time without the knowledge or consent of the previous beneficiary." 38 C.F.R. § 9.16(e).

and apparently (it is not in the record) designating as beneficiary his lawful spouse (Anne Marie, at the time). After his divorce and re-marriage to Irene, Sergeant Smith executed another such form, which will be described below.

The divorce decree between Sergeant Smith and Anne Marie, his first wife, was entered September 28, 1978. On December 12, 1978 he was formally married to Irene, the second wife. On December 19, seven days later, Sergeant Smith executed for his military records another form, a "Record of Emergency Data" (Defense Department Form 93). In this form, he designated his wife as Irene, and he had a note that on 28 September 1978 he was divorced from Anne Marie. *See* Exhibit I–3. The form instructions note that "[t]his extremely important form is to be used by you to show the names and addresses of your spouse, children, parents" in order, inter alia, "to designate beneficiaries for certain benefits if you die." The sergeant did not at this time execute a new SGLI change of beneficiary, although a notation on his emergency data form indicates that quite possibly he considered his previous designation of his lawful spouse as beneficiary sufficient to designate his new wife as such.

Nevertheless, while stationed in Germany, on September 10, 1980, he subsequently executed on the same day both a new "Servicemen's Group Life Insurance Election Form" (VA Form 29–8286), *see* Exhibit I–1, and a new "Record of Emergency Data" form (DD Form 93), *see* Exhibit I–2.[5] In the latter, again, he showed Irene his wife, and for the blank, "Insurance," a notation was included: "See VA Form 29–8286" (which had been simultaneously executed that day).

The "Servicemen's Group Life Insurance Election" form (VA Form 29–8286) executed by Sergeant Smith on September 10, 1980, simultaneously with the other documents, in Part 1 provided for the coverage and in Part 2 provided for the designation of beneficiaries. As to the latter, the instructions stated that the serviceman should insert "By Law" in his own handwriting if he wished the law as to his beneficiaries to apply as explained on the reverse side. As there explained, in the absence of other designation of beneficiary, the "widow" would under 38 U.S.C. § 770(a) (quoted in full in note 3 above) be the beneficiary "by law." For purposes of the SGLI act, "The terms 'widow' or 'widower' means a person who is the lawful spouse of the insured member at the time of his death." 38 U.S.C. § 765(7). Sergeant Smith inserted under the beneficiary designation space, "By Law."

## II.

After a bench trial, the district court found as a fact that, under the circumstances shown, Sergeant Smith regarded Irene as his lawful spouse and intended by the documents executed to make her his life insurance beneficiary. The district court pointed out that the divorce decree had been granted on September 28, 1978, and that at the time Sergeant Smith executed the designation of his beneficiary to be his lawful spouse on September 10, 1980, he had under the record evidence no reason to suspect that his first wife, Anne Marie, questioned the divorce, which had long since been mailed to her. (Although Anne Marie did file a petition to set aside the decree in August 17, 1979, the record reflects that Sergeant Smith, in Germany, was not served and did not receive notice until November 14, 1980, or afterwards, shortly before he died on November 30, 1980.)

If Sergeant Smith's actual intent is determinative (as we find it is, under the present circumstances), then the district court's finding that the decedent intended to change any other designation of beneficiary and to make Irene, his second wife, his beneficiary is subject to review under the clearly erroneous standard. *John Hancock Mutual Life Insurance Company v. Dutton*, 585 F.2d 1289, 1296 (5th

---

5. On that same day, he executed another military form stating that "a lawful marriage" to Irene took place at New Brunswick, New Jersey, on December 12, 1978. *See* Exhibit I–5.

Cir.1978); *Taylor v. United States*, 244 F.2d 799, 799 (5th Cir.1957); *Shack v. United States*, 234 F.2d 934, 937 (5th Cir.1956). *See* Fed.R.Civ.P. 52(a). The district court's finding is clearly not erroneous.

### III.

On her appeal, Anne Marie, the first wife, contends that the district court erred as a matter of law in according such weight to the actual intent of the decedent as to whom he designated as his beneficiary. She contends that under the strict construction required of a SGLI policy, the district court was required to interpret literally Sergeant Smith's designation of his beneficiary as "by law," which under the instructions accompanying the beneficiary-designation form designated his "widow", *i.e.*, his *"lawful* spouse," at the time of his death. The appellant Anne Marie thus argues that this "by law" designation made it requisite for the district court to determine who was the decedent's "lawful" spouse, which in turn required a determination of the validity or not of the decedent's divorce from his first wife, Anne Marie.

Before adverting to the jurisprudential interpretations relied upon by this argument, we first note the Congressional intent expressed by 38 U.S.C. § 770(a) (quoted in footnote 3 above) that, primarily, the beneficiary designated by the deceased in a writing filed before death should be recognized. Under statute and administrative regulation, this intended beneficiary could be any person or entity whatsoever, and the insured serviceman could change his beneficiary at will at any time. The statute thus regarded the serviceman's intended designation of beneficiary as the paramount consideration, provided that the designation was received by the military authorities prior to the serviceman's death. Only if the serviceman failed to file such designation of beneficiary did the non-designation statutory order of determining preferred beneficiaries come into play.

Under the circumstances shown, Sergeant Smith's designation in his Servicemen's Group Life Insurance Election form (VA Form 29–8266) filed on September 10, 1980, of his beneficiary as "by law" was intended (under the form's instructions) to designate as his beneficiary the spouse to whom he believed he was lawfully married at the time. By simultaneously executed and filed documents, the decedent had designated Irene, his second wife, as his lawful wife; and he had two years earlier informed military authorities of his divorce from Anne Marie. At the time of his designation, he had been divorced from Anne Marie and re-married to Irene for two years. On the face of the designation of beneficiary form and of the records then filed with the military authorities at the time of his death, Sergeant Smith's "by law" designation referred only to Irene, whom he believed to be his lawful wife.

We are re-enforced in this interpretation by the circumstance that the new designation of beneficiary form filed in 1980, two years after his divorce, had as its apparent sole purpose to make plain that Irene was his beneficiary, thus changing any former designation of beneficiary. And if, at the least, the execution of the designation in the light of the instructions reflected any ambiguity, the extraneous evidence admissible to clear this ambiguity—including that the decedent had no reason to suspect the invalidity of his prior divorce at the time of his execution—clearly proves such intent.

### IV.

Anne Marie, the first-wife appellant, contends that the designation of beneficiary form and the statutory order of precedence of beneficiary is, under the SGLI Act, to be strictly construed, citing *Stribling v. United States*, 419 F.2d 1350 (8th Cir.1969), and *Shannon v. United States*, 417 F.2d 256 (5th Cir.1969). Therefore, she argues, Sergeant Smith's designation of beneficiary as "by law" was, in effect, the designation of no beneficiary, so that therefore under 38 U.S.C. § 770(a) he, as the "widow" (i.e., "lawful spouse" at the time of death), is entitled to receive the proceeds if she es-

tablishes the invalidity of Sergeant Smith's divorce from her.

The cited decisions do not support that conclusion.

In our *Shannon* decision, the issue concerned the responsibility of the United States in notifying a SGLI insurer of a decedent's death. The deceased serviceman's wife there sued the United States under the Tort Claims Act, as well as the insurer, where the United States had informed the insurer that the second "wife" was the surviving spouse, based upon a subsequently executed record of emergency data, and the second wife had been paid the proceeds. We reversed and remanded for further proceedings the dismissal of the first wife's tort suit against the United States, because the record was unclear as to the duty of the United States. There, however, not only the issue but also the facts were quite different from the present litigation.[6] The decision is inapposite to issues before us.

In *Stribling*, the court held that a soldier did not effectively change his SGLI policy beneficiary by mailing a copy of a change of beneficiary form to his mother. *Stribling v. United States*, 419 F.2d 1350, 1353–55 (8th Cir.1969). In so holding, the court strictly construed the statutory and regulatory requirement that a beneficiary be designated by a writing filed before death. *Id.* See *Metropolitan Life Insurance Co. v. Manning*, 568 F.2d 922, 925–

926 (2d Cir.1977). The court did not, however, hold that any particular writing is required or that some writings, if filed, would not be given effect. To the contrary, the court in *Stribling* noted that no particular form is required and that any "simple written and signed designation or change of beneficiary" is sufficient. *Id.* at 1355 n. 12.[7]

*Stribling* does not, then, support Anne Marie's claim that the simultaneously-filed Record of Emergency Data form is irrelevant in determining Terry Joe's intent.

As we interpret *Stribling*'s holding, it is only that the writing requirement of the applicable statute and regulation restricts the scope of relevant proof in SGLI beneficiary contests to signed writings received before the death of the soldier-insured. Indeed, since *Stribling*, we have recognized that writings other than the SGLI Election form, if received before death, may be relevant for the purpose of determining a deceased soldier's intended beneficiary. *Coomer v. United States*, 471 F.2d 1 (5th Cir.1973) (recognizing effectiveness of makeshift form prepared by battalion personnel officer for SGLI designation of beneficiary). See *Smith v. United States*, 421 F.2d 634, 635 (5th Cir.1970) (relying in part on Record of Emergency Data form to determine intent in pre-SGLI war risk insurance case); Annotation, National Service Life Insurance: Change of Beneficiary, 13 A.L.R.Fed. 6, § 25.

**6.** In *Shannon*, no divorce proceedings had been filed, and no information of a divorce ever given the military. The deceased serviceman had in effect an allotment, unchanged, that was payable to his first wife as his spouse. The serviceman's information to the military that the second wife was his spouse was clouded because, another such form, unchanged from the time of the first marriage, provided for "payment [to be] made in the order of precedence set forth in the law". In view of the deceased serviceman's unchanged instructions to (in effect) pay the proceeds to his lawful spouse, his unchanged allotment to the first wife as his spouse, his knowledge that he had not divorced his first wife when he "married" his second (whom he also described as his sister in some of his records), and the circumstance that he designated his second wife as his spouse on a later emergency data form did not (unlike the present case) indicate an unmistakable in-

tent to designate the latter as his beneficiary. Further, the court adverted to the extraneous evidence outside the declaration of beneficiary form, presumably indicating that it was relevant in determining the serviceman's intent, if the documents as a whole were deemed to be ambiguous as to his intent.

**7.** We have cited *Stribling* with approval for the proposition that the SGLI Act, including its writing requirement, is to be strictly construed. See *Gates v. United States*, 481 F.2d 850, 854 (5th Cir.1973); *Coomer v. United States*, 471 F.2d 1, 6 (5th Cir.1973). We note that, after *Stribling*, the Eighth Circuit held that a soldier's "failure to use" the proper official form for designating a beneficiary "certainly ... should not be a vehicle by which the serviceman's will or intent could be nullified." *Prudential Insurance Co. v. King*, 453 F.2d 925, 929 (8th Cir.1971).

Moreover, 38 C.F.R. § 9.16(f) (1980) expressly acknowledges that a signed and received will or "any other document" may be used to change a beneficiary. We therefore discern no reason to give the statutory and regulatory writing requirement so narrow a construction that a soldier's intent—manifested in forms signed and received by a uniformed service prior to his death—is defeated. To do so would impair a soldier's absolute right to designate the beneficiary of his or her SGLI policy and would constitute an unwarranted deviation from the long-established aim of paying policy proceeds according to the intent of the soldier-policy holder.[8]

*Conclusion*

For the foregoing reasons, the judgment is AFFIRMED.

AFFIRMED.

**8.** Intent of the policy holder has been central to resolution of beneficiary contests in group life insurance cases generally, *Murdock v. Equitable Life Insurance Society,* 714 F.2d 474, 476 (5th Cir.1983), and in the war risk insurance cases in the days before SGLI, *Smith v. United States,* 421 F.2d 634, 635 (5th Cir.1970); Annotation, National Service Life Insurance: Change of Beneficiary, 13 A.L.R.Fed. 6. In adding a writing requirement in the SGLI Act, Congress gave no evidence of a purpose to abandon this fundamental search for intent and, instead, to engage in a formalistic analysis of the status of alleged beneficiaries. The writing requirement serves to promote administrative ease in identifying the *intended* beneficiary. Of course, any inquiry into status (who is the lawful spouse?) may be necessary where the writings in issue contain only a "by law" designation without other indications of intent. *E.g., Prudential Insurance Company v. Loyd,* 729 F.2d 728, 729–30 (11th Cir.1984) (SGLI policy). *See Huff v. Metropolitan Life Insurance Co.,* 675 F.2d 119, 121–22 (6th Cir.1982) (analogous government employee life insurance); *Metropolitan Life Insurance Co. v. Manning,* 568 F.2d 922, 925–26 (2d Cir.1977) (same); *Spearman v. Spearman,* 482 F.2d 1203, 1204–05 (5th Cir.1973) (same).