Setsuko M. GEIS, Plaintiff and Appellant,

v.

UNITED STATES of America and Masako Geis, Defendants and Appellees.

No. 21424.

United States Court of Appeals Ninth Circuit.

Nov. 8, 1968.

Rehearing Denied Dec. 27, 1968.

Merrill, Circuit Judge, dissented.

George S. Lundin (argued), of Geraghty, Lundin & Geraghty, Seattle, Wash., for appellant.

Albert E. Stephan (argued), Asst. U. S. Atty., Eugene G. Cushing, U. S. Atty., Seattle, Wash., for the United States.

Casey & Pruzan, Phillip Hutchison (argued), Seattle, Wash., for appellee Masako Geis.

Before CHAMBERS, MERRILL and KOELSCH, Circuit Judges.

CHAMBERS, Circuit Judge:

Walter W. Geis served in the United States Army and the United States Air Force for more than 22 years prior to his death in 1963. First he married Setsuko in 1951 in Japan. She came with him to the United States and was divorced from him in Seattle in 1956. Apparently one son was born to this marriage, although it is not clear that he knew of the birth. Then, back again in Japan, in 1957 he married Masako. She, too, came to the United States and she survives him as his widow. Three children were born to the second marriage.

At issue here is his $10,000 National Service Life Insurance policy, the proceeds of which have already been paid

to Masako by the Veterans Administration.[1]

Under the policy, Setsuko was the only expressly designated first beneficiary of the proceeds. This occurred in 1950, even before his marriage to Setsuko. The policy remained in force under a waiver of premiums permitted servicemen. This was executed in 1951.

The district court accepted the testimony that Walter had the mistaken belief for many years before his death that his National Service Life Insurance had lapsed. Actually, he had bought privately a ten thousand dollar commercial policy for Masako. We accept the finding.

The district court ruled in favor of Masako, the second wife. This was done on the basis of a little piece of evidence here and a little there that would convince anyone that the relationship between Setsuko and Walter, from a time prior to the divorce to the time of his death, was such that he would not have given Setsuko anything he did not have to give her. And this is fortified by exhibits in the official file.

Nothing was ever directed toward the Veterans Administration in writing that requested a change from Setsuko to Masako. There is nothing in writing indicating he thought that he had requested a change to Masako.

The Veterans Administration relied on an Emergency Data Record dated October 24, 1962, delivered to the Air Force by Walter.[2] Under it he designated Masako as:

(1) Beneficiary for unpaid pay and allowances, including airman's deposit (in event of death). This is under Public Law 84–147, 69 Stat. 295, which has nothing to do with insurance.

(2) Person to receive allotment if missing (in action). This has nothing to do with insurance.

In August, 1957, before marrying Masako, he filed with the Air Force an application for permission to marry. In it he did say, "She will [be]come my survivor under the survivor benefits." But at the time he thought he had no National Service Life Insurance. If he had thought he did, we might bridge the gap with this.

After his remarriage, all of his regular pay allotments (for a portion of his regular pay) were made in varying amounts to Masako. There is one query from the Veterans Administration to Walter dated July 19, 1956, six weeks after his divorce from Setsuko. It asked for information about his military service "for his insurance records."[3] This was answered by Walter on a government form witnessed by an Air Force officer. It should have put Walter on inquiry (if not notice) that he possibly had some government insurance remaining. But it did not cause him to inquire.

There is abundant evidence to conclude that if Walter had known of the continued life in the policy, he surely would have named Masako and cancelled

---

1. The applicable statute is 38 U.S.C. § 749, which reads:
   "Subject to regulations, the insured shall at all times have the right to change the beneficiary or beneficiaries of a United States Government insurance policy without the consent of such beneficiary or beneficiaries."
   The applicable regulation is 38 C.F.R. § 8.47, which reads:
   "The insured shall have the right at any time, and from time to time, and without the knowledge or consent of the beneficiary, to cancel the beneficiary designation, or to change the beneficiary, * * * A change of beneficiary to be effective must be made by notice in writing signed by the insured and forwarded to the Veterans Administration by the insured or his agent, * * *"

2. The emergency record was an Air Force form No. 246, apparently similar to the D.D.Form 93 in Behrens, cited infra.

3. This might have put many on inquiry as to whether the insurance was in force, but it is also consistent with someone in the Veterans Administration wanting to tidy up an old record.

out Setsuko as beneficiary. But this is a case of what a man would have done if he had thought. The federal cases are all most liberal in holding that one must search for intent, and tend to slide over most technicalities.

■■ The burden of proof was on Masako. The cases to date where formalities have been waived show a fairly clear intent to change a beneficiary and some trifle of an affirmative act to change the beneficiary, or an expression of a belief in writing by the soldier that he had changed it. See our cases of Aguilar v. United States, 9 Cir., 226 F. 2d 414, and Behrens v. United States, 9 Cir., 299 F.2d 662. Cf. Moore v. United States, N.D.Cal., 129 F.Supp. 456.

Probably we would not go as far as Bernard v. United States, 8 Cir., 368 F.2d 897, where there were signed information forms in which the soldier had listed his second wife as the beneficiary. The soldier had not taken any formal steps, and the formally unchanged beneficiary (the father) prevailed. Our Behrens makes Bernard doubtful here.

■ Of course, we deal with federal largesse here, and federal law, whatever it be, is controlling.

■ In our Behrens case there is plenty of reliable evidence to conclude that the soldier thought he had effected the change in beneficiary which he had technically failed to do. Here we would have to go further and say, "If he had known, we are confident he would have changed; therefore, we change it." [4]

The judgment is reversed for proceedings.

MERRILL, Circuit Judge (dissenting).

I dissent.

As the majority opinion points out, the formalities required in cases of private insurance, which are rigidly bound to contract principles, are not normally required in cases involving National Service Life Insurance. Payments are regarded more in the nature of Government benefits. Strict adherence to the Veterans Administration Regulations has not been demanded when considerations of intent and equity call for relaxation. Behrens v. United States, 299 F.2d 662 (9th Cir. 1962); Mitchell v. United States, 165 F.2d 758 (5th Cir. 1948); Annotation 2 A.L.R.2d 489 (1948).

Here I would say the record clearly establishes that the insured intended his widow to have all his service benefits of whatsoever kind and his first wife to have nothing. Certainly the District Court's findings as to intent have ample support.

Where the insured is aware of the existence of his insurance I can see good reason for requiring some overt act in corroboration of his expressions of intent to change beneficiaries, or some proof that he believed that he had accomplished the change. Lack of such action or proof rationally suggests that the true intent was otherwise than as was expressed.

I see no reason for applying this rule to the rare case where the insured was unaware of the existence of his insurance. Lack of overt action or proof of belief of change is not inconsistent with an intent that a specific person should

4. One troubling thing here is that no witness testified. Many documents were received in evidence. Stipulations were made that if certain witnesses were called they "would testify as follows:" Thus, a court would have difficulty disbelieving anybody. But only one conflict and one possible conflict appear.

A letter came into evidence dated October, 1964, (after Walter's death) from Walter F. Geis, Walter W.'s father, in which he said, "Some time before he

[Walter W.] died, he told my wife [Walter F.'s wife or Walter W.'s mother], Mrs. Matilda Geis, since deceased, and myself that he made his mother the first beneficiary and me the 2nd." On the record Tillie Geis, the mother, was the contingent beneficiary after Setsuko.

Perhaps the court was justified in wholly disregarding the father's letter as too indefinite. "Some time ago" could have been any time after the insured took out the policy in 1950.

be his beneficiary. More importantly, such evidence is of the sort one would expect never to exist under the circumstances. By requiring one who does not know that he is insured to behave as if he did know we put the intent of the insured wholly beyond the reach of the Government in all such cases.

I would affirm.