Rachel B. CARROLL and Cynthia B. Fasano, Plaintiffs,

v.

METROPOLITAN INSURANCE AND ANNUITY COMPANY, Defendant.

METROPLITAN INSURANCE AND ANNUITY COMPANY, Counterclaimant,

v.

Rachel B. CARROLL, Cynthia B. Fasano, Great Southern Finance Company, Inc. and Rachel B. Carroll, Executrix of the Estate of Ray T. Bracken, Counterdefendants.

GREAT SOUTHERN FINANCE COMPANY, Counterclaimant,

v.

Rachel B. CARROLL, Cynthia B. Fasano, Metropolitan Insurance and Annuity Company, and Rachel B. Carroll, Executrix of the Estate of Ray T. Bracken, Counterdefendants.

Civil No. 3:96CV9LN.

United States District Court, S.D. Mississippi, Jackson Division.

June 13, 1997.

Michael J. Malouf, Robert J. Malouf, Malouf & Malouf, Jackson, MS, for Plaintiffs.

Walter D. Willson, Wells, Marble & Hurst, Jackson, MS, for Defendant.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

This cause is before the court on the motion of counterdefendants Rachel B. Carroll and Cynthia B. Fasano for summary judgment on the claim of Great Southern Finance Company (Great Southern). Great Southern has responded to the motion, and the court, having considered the memoranda of authorities, together with attachments, submitted by

the parties, concludes that the motion is well taken and should be granted.[1]

On August 7, 1993, Metropolitan Insurance and Annuity Company (MIAC) issued a policy of life insurance to Ray T. Bracken. Mr. Bracken was identified as the policy owner, and named as beneficiary was his wife, Mary E. Bracken; Mr. Bracken's daughters, Cynthia Fasano and Michele Carroll, were contingent beneficiaries. Soon thereafter, though, for tax purposes and on the advice of his accountant, Mr. Bracken changed the owner and beneficiary of the policy to Great Southern Finance Company, of which he was at the time sole stockholder. Then, on January 4, 1994, Ray Bracken, still the sole stockholder of Great Southern, and Billy Chris Green, then vice-president of Great Southern, acting on behalf of Great Southern, executed forms to change the owners and beneficiaries of the MIAC policy to Michele Carroll and Cynthia Fasano. That Mr. Bracken and Mr. Green completed all the forms required to change the owners and beneficiaries on the policy to Mr. Bracken's daughters and submitted the forms to his local insurance agency is uncontroverted. And there is unrefuted evidence that the local agency in turn transmitted the forms to MIAC's home office. However, MIAC never received the forms or recorded the change of ownership/beneficiary in its home office. Thus, when Mr. Bracken died on June 10, 1995, MIAC's records reflected that Great Southern was the owner and beneficiary of the subject policy.

■ In this action, plaintiffs/counterdefendants Carroll and Fasano maintain that since Great Southern, through Mr. Bracken and Billy Chris Green, substantially complied with all conditions requisite to changing the owner/beneficiary of the policy, then even though MIAC may never have received the forms intended to effect those changes, under Mississippi law, they are properly considered the owners and beneficiaries of the policy. The court agrees. The law in Mississippi is clear: "[W]here an insured evidences an intent to change beneficiaries, and does all he can to comply with the requirements of the policy, substantial compliance will be found and the change of beneficiaries will be upheld." *Bell v. Parker*, 563 So.2d 594 (Miss.1990). In so ruling, the court in *Bell* referenced a prior decision in which the court had given effect to a change of beneficiary where the insured completed the necessary forms and sent them to the insurer, but the insurer neglected to make the requested change. The court said:

> In such case, the intent of the insured should be given full weight and where such intent is expressed in the manner required by the insurer and the insured has met all requirements prerequisite to a change in beneficiary, equity will regard that as done which ought to be done. [citations omitted] Here there was ample testimony upon which the trial court could find that the intent of insured was that Emma Faulkner should be made the beneficiary. There were no other steps that insured could have taken so that he is held to have done all that he reasonably could to effect such change. It is not relevant that the policy was not examined after its return and delivery.... Such omission is consistent with a reasonable presumption of compliance. His duty was to satisfy the company and not his curiosity.

*Id.* at 597 (quoting *Faulkner v. Faulkner*, 192 Miss. 358, 5 So.2d 421, 422–23 (1942)) The *Bell* court applied the "substantial compliance" rule to give effect to an insurer's oral change of her life insurance beneficiary from her former fiancé to her two daughters. In *Bell*, the insured had orally advised the insurance assistant at her nursing home that she wanted to change the beneficiary on two policies, her accident insurance policy and life insurance policy; a form was completed for the change of beneficiary on the accident policy but no change of beneficiary forms were available at that time for the life insurance policy. The insurance assistant assured the insured that she would get her the forms but six days later, the insured died without

---

1. There has also been filed in this cause a motion by Metropolitan Insurance and Annuity Company for summary judgment in which it contends that the policy at issue in this litigation is void due to material misrepresentations by the insured in the application for coverage. That motion is currently being held in abeyance pending the completion of discovery.

having completed a written change of beneficiary form as required by the terms of her policy. The court concluded that while "[t]he law is that a change of beneficiary must be made in writing and in proper form, [w]here this has not been done, the courts will brush aside technicalities to give effect to the intention of the insured." *Id.* at 599 (quoting *Mitchell v. United States*, 165 F.2d 758, 761 (5th Cir.1948)). Because the insured "had, in fact, done everything she knew to do to change the beneficiary on her group life insurance policy," her intention to change the beneficiary was given effect.

█ In the court's opinion, given that under applicable Mississippi authority, an insured's oral notification to an insurance assistant at her nursing home qualifies as "substantial compliance" for purposes of effecting a change of beneficiary, what occurred in this case was clearly satisfactory. As the court in *Bell* indicated, two questions are pertinent to the "substantial compliance" issue: (1) whether the insurer intended to change the beneficiary, and (2) whether he did everything to the best of his ability to effectuate the change. *Id.* at 598. The answer to both questions here is clearly in the affirmative. It is absolutely and unequivocally undisputed that Ray T. Bracken and his company, Great Southern, intended and properly executed all documents and forms on January 4, 1994 to change the ownership and beneficiary of the policy in issue to Mr. Bracken's two daughters. In fact, Chris Green, who purchased Great Southern from Mr. Bracken in September 1994, has admitted time and again that this was what was intended and that following the execution on January 4, 1994 of the change forms, he did not consider that either he or Great Southern owned or had any interest in the policy.[2] Moreover, it is manifest that Mr. Bracken, Chris Green and Great Southern did all that

could be done to effectuate the change. The proper forms were completed and transmitted to the local agent which in turn sent them to the insurer.

█ In the face of these undisputed facts, Great Southern argues that there is at least a genuine issue of material fact with regard to whether there was substantial compliance since "it would appear that if the substantial compliance doctrine was to be in effect that the application for change of ownership/beneficiary would have been received by MIAC within" the eighteen months between the time the forms were executed and Mr. Bracken's death. However, as plaintiffs correctly observe, the question whether there has been substantial compliance is answered by reference to what the *insured* did to effect the change of beneficiary, not by reference to whether his efforts were actually successful. Indeed, to accept Great Southern's position would be to ignore the rule of "substantial compliance" altogether, for what Great Southern is in effect suggesting is that there must be full compliance in order for there to be substantial compliance.

Great Southern next argues that summary judgment on the basis of substantial compliance is precluded because "one would assume that the doctrine of substantial compliance would require at least a minimum of investigation on behalf of the insured and/or agent to verify that the change of owners/beneficiaries had been received by the home office." It is recalled, though, that a similar argument was rejected by the court in *Faulkner*, which was cited and quoted in *Bell*. Again, the court in *Faulkner* stated that there was substantial compliance despite the insured's failure to review his policy to verify that the insurer had changed the beneficiary. *Faulkner*, 5 So.2d at 422. "Such omission [was]

2. Due to the confusion that arose following Mr. Bracken's death concerning who was the proper beneficiary, Chris Green executed a release on September 20, 1995 wherein he specifically acknowledged that "the intention of Ray T. Bracken and Great Southern was to transfer ownership of the policy to ... Michele R. Carroll and Cindy Bracken [Fasano]," and further acknowledged that neither he nor Great Southern had any interest in the policy and released any right or interest in the policy. Plaintiffs argue this

release bars Great Southern's claim to the policy and its benefits. Great Southern argues, though, that the release constitutes a fraudulent conveyance which must be declared void because it was without consideration and was executed less than a year prior to Great Southern's filing of a bankruptcy petition at a time when it was insolvent. The court need not address the question of the validity and/or enforceability of the release since it concludes that Great Southern had no interest in the policy following January 4, 1994.

consistent with a reasonable presumption of compliance. [The insured's] duty was to satisfy the company and not his curiosity." *Id.*

■ Great Southern submits, finally, that even if it is determined that it is not the owner or beneficiary of the policy, it paid the premiums on the policy at all times from and after January 4, 1994 and is entitled to recover those payments from the plaintiffs on the basis of unjust enrichment. Great Southern has pointed to no evidence in support of its contention that it paid these premiums; plaintiffs, on the other hand, have adduced evidence which reflects that the premium payments were drafted, by automatic draft, from an account which they established for the purpose of making those payments. Following his purchase of Great Southern from Mr. Bracken in September 1994, the new owner, Chris Green, made payments to Mr. Bracken into the plaintiffs' account, not for the purpose of paying the policy premiums, but because Mr. Bracken had financed the purchase and payments were due him from Mr. Green which payments were made into plaintiffs' account. There is no basis in the record, therefore, for concluding that Great Southern is entitled to a return of any premium payments.

Based on the foregoing, it is ordered that plaintiffs' motion for summary judgment against Great Southern is granted.